The President after recapitulating the above facts, delivered the opinion of the Court.
 

 Shippen, President:
 

 The first point which arises on the case, is, whether there was any subsisting lien in favour of the first disrainor, the goods having been replevied and security given ?
 

 Whatever doubt there might have been before, as to this question, it appears to be now fettled by the case of
 
 Bradyl
 
 ’
 
 *69
 

 versus
 
 the
 
 Assignees
 
 of
 
 Bradbury,
 
 in
 
 Brown’s
 
 Reports in Chancery 427, that no lien remained in the distrainor. By the replevin, the securities in the bond are subtituted in the place of the goods, which are restored to the tenant, as his sole property; he may fell them; they may be taken in execution ; and they become liable to any future lien or incumbrance. Upon the
 
 retorna habendo,
 
 if the identical goods distrained, are found in the hands of the tenant undisposed of, and unincumbered, they may be taken by the Sheriff; if not, after an
 
 Elongata
 
 returned, a' Wither*
 
 num
 
 may go against the general goods of the tenant.
 

 As to the removal of the goods by the tenant, and the subsequent appraisement,
 
 i
 
 t will be proper to take notice of the alterations made in the common law, by the statutes in
 
 England,
 
 and our act of Assembly.
 

 Distresses for rent being, at common law, in nature only of pledges, the distrainor had no power to sell or dispose of them, till the statute of 2
 
 W & M. c.
 
 5.
 
 s
 
 2. which directs, that, if upon a distress made, the tenant did not in five days after replevy the same, the person distraining might, with a proper officer, cause the goods distrained, to be appraised, and after such appraisement to be sold. The statute of 11
 
 Geo.
 
 2.
 
 c.
 
 19. makes it lawful for the distrainor to impound the distress on the premises, and their to appraise, sell, and dispose of them. Our act of Assembly pursues in general the directions of the statute of
 
 William,
 
 and contains some of the clauses of the latter statute, but omits that which empowers the landlord to impound on the premises : the usage, however, has been, both before and since our act of Assembly, to impound on the premises agreeably to the directions of the act of
 
 Geo.
 
 the
 
 2d.
 
 Whether that usage will amount to an adoption of the statute, need not be considered in the present case, because the goods did not remain upon the premises that length of time, which the statute requires to give the landlord a right to appraise and sell them without a removal ; but it is material to consider whether under our act of Assembly he might not legally leave them on the premises for the space of time which he appears to have done. The clause in the statute of
 
 William
 
 before recited, is transcribed, almost
 
 verbatim,
 
 in the act of Assembly. The case of
 
 Griffin versus Scot,
 
 in 2
 
 Stra.
 
 717. was determined many years previous to the statute of 11.
 
 G.
 
 2. It was an action of trespass against a landlord, for entering his house, and keeping possession of his goods for eight days. The defendant justified, under a distress for rent: And the Court say in that case, that the defendant ought to have removed the goods
 
 at the five days end,
 
 but having kept them for eight days, he was a trespassor for the
 
 other three days.
 
 This implied strongly, that the construction of the statute of
 
 William,
 
 was, that the distrainor might leave the distress on the premises,
 
 *70
 

 for five
 
 days, mentioned in the act, that the tenant might have the opportunity of replevying them, in the same plight in which they were when restrained. If that was the construction of the statute of
 
 William,
 
 the like construction will hold under our act of Assembly, which follows the words of the statute. Even at common law, goods distrained might be left on the premises, for a reasonable time. In the present case, they were left but one day, before they were removed by the tenant himself, and they were quickly followed, and appraised in the house to which they were removed. By the act of Assembly they could not be appraised till five days after the distress, they were actually appraised within eight days, though clandestinely removed by the tenant, in the mean time. By the common law, in the case of a pound breach, by the owner of the goods, the distrainor may have his action
 
 de parco fracto,
 
 or
 
 may take the goods destrained wherever he finds them,
 
 and impound them again ;
 
 Co Lit.
 
 47.
 
 b.
 
 1
 
 Rol.
 
 Ab. 674 ;
 
 12 Mod. 661.
 
 The following the goods and making the appraisement, in so short a time, under the directions of the Officer who made the distress, was all that could be reasonably expected from the landlord, who ought not to be defeated of his remedy, by the unlawful act of the tenant. If not defeated as against the tenant, he could not be defeated as against the first distrainor, who had no better right than the tenant himself had,
 
 unless
 
 his original lien had continued.
 

 The judgment for a return in favor of the first distrainor, the issuing the writ of
 
 retorno habendo,
 
 and the taking of the goods under it by the Sheriff, were all subsequent to the second distress and appraisement, and before the distrainor could by law expose them to sale. We therefore think, there was no default in him, that the goods were in
 
 custodia legis,
 
 subject to his lien, and were, consequently, wrongfully taken by the defendant, under the writ of
 
 retorno habendo.