4w 39
148 92

4 W 39
24 SC 158

## Gray *against* Wilson.

General covenants providing for the settlement, by arbitration, of disputes that may arise between the contracting parties, do not take away the jurisdiction of the courts.

Upon a sale by execution of the personal property of a tenant, on demised premises, the landlord is entitled to have, out of the proceeds of such sale, the amount of rent due to him, not exceeding one year: but if the landlord had, previously to the levy and sale, distrained the property, and the tenant had replevied the same, he would not be entitled to have out of the proceeds of the sale by the sheriff any other amount of rent than that which accrued subsequently to the distress.

The rule that a set-off is not admissible in an action of replevin, is not applicable upon the trial of a feigned issue to ascertain whether there is any rent due by a tenant to his landlord.

[Gray v. Wilson.]

**ERROR** to the common pleas of *Cumberland* county.

This was an issue directed by the court of common pleas, in which James Wilson was made plaintiff, and John Gray, Samuel Alexander, Esq. and Jacob Fetter, were defendants.

All the points and facts of the case are fully stated in the opinion of the court, which was delivered by

SERGEANT, J.—Certain moneys were brought into the court below, which were the proceeds of the sales of personal property of Jacob G. Cauffman and John Gray, by virtue of executions at the suits of various creditors, on judgments obtained in that court. The sales were made on the 13th of February 1834. The plaintiffs claimed a balance due to them, as landlords of Gray (of whom Cauffman became partner), for rent amounting to 764 dollars and 68 cents, and gave notice to that effect to the sheriff on the 11th of February 1834, the goods being on the premises of Cauffman and Gray when seized in execution. The court directed an issue, in which James Wilson and wife were plaintiffs, and Jacob G. Cauffman (since deceased), John Gray, Samuel Alexander and Jacob Fetter (creditors), were defendants, to try " whether there was any rent due to the plaintiffs at the date of the notice to the sheriff, and if so, how much, and if payable out of the fund on that day, on a lease between the said James and wife, and John Gray, dated the 7th of July 1831. A declaration in debt to be filed upon the lease, and, on the plea of payment, the same to be considered at issue."

On the trial of this issue, the plaintiffs gave in evidence the above-mentioned lease from them to Gray, of the Cumberland Furnace property, containing the following provisions. " Said James covenants that he shall and will, by or before the 1st of November next, erect and cause to be erected (so far as not already done), sufficient stabling, conveniently situated on said premises, for the horses of four furnace teams. If the said John should be turned out of possession of said premises during said term, or if, from any other cause, either of said parties shall claim damages from the other, by reason of any thing arising out of this lease, the ascertainment and liquidation of the amount thereof shall be left to three impartial and judicious men, one of whom shall be chosen by each of said parties, and the two so chosen shall choose the third, or umpire, and they three having met, &c. &c. If either refuse, a judge to appoint," &c.

The defendants offered to prove that no stabling was built on the premises, agreeably to the stipulation in the lease, by the said J. Wilson, and that the lessee sustained damages thereby to a large amount. The plaintiffs objected to this evidence, on the ground that, by the terms of the lease, no injury of this kind can now be inquired into; if damages were sustained, they could only be ascertained and fixed by the tribunal, and in the manner pointed out in the lease. The court sustained the objection and overruled the evidence; and exception was taken by the defendants.

[Gray v. Wilson.]

General clauses providing for the settlement, by arbitration, of disputes that may arise between the contracting parties, are not unfrequently inserted in partnership agreements, leases and other instruments of writing, but they do not take away the jurisdiction of the courts. Whether they would be a ground of action, should one party, on request by the other, refuse to concur in naming an arbitrator, may be doubted; but certainly a plea of this kind, in nature of a plea to the jurisdiction, would not be entertained. It is not to be supposed that parties, by such agreements, waive the jurisdiction of the ordinary tribunals of the country, unless they expressly exclude them. Even a nomination of an arbitrator, under a submission of existing controversies, may be revoked, and though the party may forfeit his bond, the jurisdiction of the courts remain. It is possible special cases may exist where a court of equity might deem it expedient to hold the parties to a tribunal constituted by themselves; but, generally speaking, these clauses are of no avail, and amount only to an empty name. In this case it did not appear that either party ever sought to carry the covenant into effect. See *Plat. Cov.* 146, (*No.* 7 *of the Law Lib. p.* 65), where the cases on this head are collected. The evidence ought not, therefore, to have been rejected on this ground. And it was a proper subject of deduction from the rent claimed under the lease, that the lessor had violated the contracts contained in it. Under our defalcation act, on the plea of payment, the defendant may defalk from the plaintiff's demand, a claim arising out of the same contract or bargain on which the suit is brought. This is the consequence of the terms of our act, which are more comprehensive than the English statutes of set-off; and it has received a liberal construction, to prevent multiplicity of suits.

The defendants also offered the record of a replevin to November term 1833, in the court of common pleas of Cumberland county, at the suit of J. G. Cauffman against Wilson and another, for goods distrained by Wilson and wife for payment of 314 dollars 68 cents, a part of the rent claimed in this issue, under a landlord's warrant dated the 2d of October 1833, which suit was still pending. The goods had been replevied and delivered up to the plaintiff on giving bond according to law. This evidence was offered to defeat the claim of the plaintiffs for that amount in this action. It was objected to by the plaintiffs and rejected by the court, who sealed another bill of exceptions.

The act of assembly of the 21st of March 1772, sect. 4, gives to a landlord a priority out of the proceeds of sale of goods on the premises by execution, for all such sum or sums of money as are due for rent of the premises, not exceeding one year. This act was intended to give the landlord a remedy similar to that by distress. It preserved to him a lien, and at the same time prevented a competition between the landlord and creditors, oppressive to the tenant and creating increased cost. But it was not intended to give the landlord a remedy different in its character and operation from that of a

IV.—F

[Gray v. Wilson.]

distress; notwithstanding, by construction of some of its words, the amount due at the time of the sale may accrue to the landlord under it, whereas a distress confines him to the day when the rent was payable. Now it is settled by two cases adjudicated in our courts, Woglam *v.* Cowperthwaite, 2 *Dall.* 68, and Frey *v.* Leeper, *Ibid.* 131, citing Bradyll *v.* Ball, 1 *Bro. C. C.* 427, that when goods have been replevied and security given, no lien on them remains in the distrainer. The securities in the bond are substituted in the place of the goods, which are restored to the tenant as his sole property. He may sell them; they may be taken in execution, or become liable to any future lien or incumbrance. On the *retorno habendo,* if the identical goods distrained are found in the hands of the tenant, undisposed of and unincumbered, they may be taken by the sheriff; if not, after *elongata* returned, a *withernam* may go against the general goods of the tenant. If then the landlord has exercised his right of distress, and received security for his rent by the replevin bond, and the goods are discharged from any lien in his favour by the substitution of the bond, he is not entitled to come in a second time under the act of assembly, and claim the amount out of the proceeds of sale of goods seized in execution on the premises. He has elected a remedy in which he may recover his rent by obtaining judgment on his avowry, and has the replevin bond for security, with the additional responsibility of the sheriff, if the sureties in the bond prove insufficient. Under these circumstances he cannot relinquish a source of satisfaction in his hands, and assert another claim of priority, any more than he can make a second distress while the replevin is pending. Such a step would be unjust to the creditors, who would lose the amount, for the benefit of the tenant and his sureties in the replevin bond. Though not absolutely paid, this state of things is tantamount to payment, and the rent cannot, within the true meaning of the law, be considered as due so far as respects the goods taken in execution. It resembles somewhat a levy of personal estate on an execution, which is considered as legal satisfaction to the plaintiff. We are, therefore, of opinion that the court ought to have admitted this record in evidence.

The defendants then offered in evidence a promissory note from the plaintiff, Wilson, to Mahlon Parritt, indorsed to the defendant, Gray, dated the 20th of July 1831, and gave evidence that Wilson agreed that Gray should pay Parritt the amount and hold the note against him : on which Gray paid the money to Parritt. This was objected to by the plaintiffs and overruled by the court, and the defendants excepted.

The reasons assigned by the court were: "A set-off cannot be made in this case, of this kind. At common law there was no set-off, and it has been often decided that in replevin and an avowry for rent in arrear, set-off is not admissible. This is like avowry for rent in arrear. It is a claim under notice, not by *action.* And it is only in case of *action* brought that set-off, even direct, is admis-

[Gray v. Wilson.]

sible.  This is an issue to try facts to enable the court to make appropriation ; but if we were trying the replevin, the offer would be inadmissible."

It is true that replevin being in form an action for a tort in seizing the plaintiff's goods, it has been held that in this action a set-off is inadmissible: though the English courts have been disposed to go as far as they could to allow it, and have permitted deductions for taxes and ground rent paid by the tenant.  But the doctrine seems inapplicable to this case.  The proceeding was a feigned issue to try the rights of the parties, under the general power given by the act of assembly of 1827, authorizing the courts to distribute moneys raised by execution according to law and equity.  The issue is but a form to attain this object, and ought to be made subservient to the justice of the case, neither party being allowed to take the other by surprise.  But the action here was in form an action of debt; and in debt or covenant for rent, a set-off is admissible.  We think, therefore, that the court was not warranted in rejecting this and the subsequent evidence to the same effect for the reasons they assigned.

Judgment reversed, and a *venire facias de novo* awarded.

*Alexander* and *Carothers*, for plaintiffs in error, argued that the former distress and replevin precluded the recovery of the same rent in this form : Woglam *v.* Cowperthwaite, 2 *Dall.* 68 ; Frey *v.* Leeper, *Ibid.* 131 ; 1 *Bro. Cha.* 427 ; 6 *Bac. Ab.* 34.  And that the set-off was admissible : 6 *Bac. Ab.* 83 ; *Bul. Nisi Prius* 181 ; 1 *Black. Rep.* 204 ; 4 *Durn. & East* 513.

*Watts*, for defendant in error, admitted that there was error in disallowing the set-off ; but contended on the other two points that the court below was right.