## BURKLE and GEBBARD, Executors, &c., *vs.* LUCE.

After a Sheriff had levied upon property which belonged to the defendant in the execution, another person brought replevin, and had the same property deliv- ered to him upon the writ, and died pending the action; *held*, that the Sheriff might retake the property and sell it to satisfy the execution.

On the death of a plaintiff in replevin the action abates and cannot be revived by *scire facias.*

In such a case the defendant has no remedy upon the replevin bond.

Where the original Execution upon which a levy had been made was lost, and the Supreme Court from which it issued, ordered, on motion, that a new one like the original be issued as a substitute therefor, that the Sheriff's certificate of the levy be endorsed thereon, and that such substituted execution and cer- tificate have the same force and effect as the original would have; and a new execution was issued and endorsed accordingly; *held*, that the same was admissible as primary evidence to prove and justify the levy without showing the loss of the original.

On error from the Supreme Court. Burkle and Gebbard, as executors of the will of Charlotte Seitz, sued Luce in re- plevin. The cause was first tried at the Oswego Circuit in June, 1843, when a verdict was had for the plaintiffs. The Supreme Court on bill of exceptions granted a new trial. (*See* 6 *Hill* 558.) The cause was again tried before GRID- LEY, Circuit Judge, at the Oswego Circuit, in June, 1845. The case was this: The defendant was a deputy of the Sheriff of Oswego county, and on the 8th of January, 1840, a *fieri facias* was delivered to him against Christian J. Bur- kle, and on the same day he levied it upon the property in controversy. Charlotte Seitz claiming the property under a previous sale to her from Burkle, brought replevin against the defendant and had the goods delivered to her by virtue of the writ. That action was tried and a verdict found for the defendant, which was set aside, and a new trial ordered. Afterwards on the 11th of February, 1842, Mrs. Seitz, the plaintiff in that action died, having made her will, and ap- pointed the plaintiffs in this suit her executors. In July or August following, the defendant repossessed himself of the goods, and claimed to hold them by virtue of his levy above

mentioned; and thereupon the plaintiffs as executors brought this second action of replevin and retook the property.

Burkle, the defendant in the execution, was the owner of the property on the 26th of December, 1839, and on that day executed a bill of sale of it to Mrs. Seitz, which sale was claimed by the defendant to be fraudulent and void as against the creditors of Burkle, and evidence was given tending to show that such was the fact. The question of fraud was submitted by the Circuit Judge to the Jury.

The plaintiffs' counsel requested the Judge to charge, that although the sale by Burkle to Mrs. Seitz might be fraudulent, yet that the execution of the writ of replevin brought by Mrs. Seitz, destroyed the lien of the *fieri facias*, and that the defendant had no right to retake the property. The Circuit Judge refused so to charge, and the plaintiff excepted.

Evidence was given tending to show that the original *fieri facias* was lost after the levy was made under it. It also appeared that after the supposed loss, the plaintiff in the *fieri facias* made a motion in the Supreme Court for relief, and on that motion, after hearing counsel on both sides, the Supreme Court made an order, that a new execution be issued under the seal of the Court, similar to the original one, that the directions to the Sheriff and the Sheriff's certificate of levy, which were endorsed on the original, be endorsed on the new one to be issued, and that such new execution and the endorsements thereon be of the same validity and effect for all purposes as would have been the original, had not the same been lost. In pursuance of this order a new execution was issued, which was a copy of the original, and on which the defendant as deputy sheriff made the same endorsement of levy as he had made on the original. This substituted execution was offered in evidence on the trial. This was objected to by the plaintiffs, on the ground that the loss of the original was not sufficiently proved. The Judge admitted the execution in evidence, and the plaintiff excepted.

The jury found a verdict for the defendant; and the plaintiffs moved in the Supreme Court for a new trial upon bill of

exceptions, which motion was denied, and judgment rendered for the defendant.

.*W. Duer*, for plaintiff in error.

*N. Hill jr.* and *E: B. Talcott* for defendant in error.

JEWETT, CH. J., delivered the opinion of the Court.    I am of opinion that the action brought by Mrs. Seitz, abated by her death, and could not be revived by *scire facias*.    (2 *R. S.* 576, § 2; *ib.* 386–7, §§ 2, 3 ; *Webber* vs. *Underhill*, 19 *Wend.* 447 ; *Cutfield* vs. *Corney*, 2 *Wils. R.* 83.)

The plaintiffs, however, insist that the delivery of the goods to Mrs. Seitz, by virtue of her writ of replevin, put an end to the lien acquired by the levy under the execution made by the defendant, and consequently he had no right to retake the property, although the suit was at an end.    If this position be correct, it would seem plain that the plaintiff in the execution, might lose all remedy under it to collect his debt, although there was enough property of the defendant in the execution levied upon, to satisfy it, and still have no remedy upon the bond given by the plaintiff, in the replevin suit, to the Sheriff on his executing the writ; the condition of the bond being, that the plaintiff will prosecute the suit to effect, and without delay, and that if the defendant recover judgment against the plaintiff in the action, he will return the same property, if return thereof be adjudged, and will pay to the defendant all such sums of money as may be recovered against him, by such defendant in the said action, for any cause whatever.    To comply with the conditions of the bond, the plaintiff was required, 1st, to prosecute her suit to effect without delay, and 2d, in case the defendant recovered judgment against her in the suit, to return the same property, &c.    Having died during the due prosecution and pendency of the suit, the law holds that the prosecution was to effect, "because there was neither a non-suit or verdict against her."    (2 *R. S.* 523, § 7 ; *Badlam* vs. *Tucker*, 1 *Pick.* 284 : *Duke of Ormand* vs.

*Biesly*, *Carthew* 519,) and therefore no breach of the condition of the bond occurred, and the defendant has no remedy upon it, although the suit was at an end and the plaintiff's representatives were in quiet possession and use of the property replevied. The condition of the bond does not cover the case. (*Cowdin* vs. *Stanton*, 12 *Wend.* 120.)

The plaintiff's counsel has cited, in support of his proposition, (*Bradyll* vs. *Ball*, 1 *Brown Ch. R.* 427 ; *Woglam* vs. *Cowperthwaite*, 2 *Dall.* 68 ; *Frey* vs. *Leeper*, 2 *Dall.* 131 ; and *Acker* vs. *White*, 25 *Wend.* 614.)

In the first case, the goods of one Bradbury, a tenant, were distrained by his landlord for rent; the tenant brought replevin, and pending the suit became bankrupt, as also his sureties in the replevin bond, and his goods, including those distrained, passed into the hands of the defendants, Jones and Ball, his assignees who sold them. Afterwards the defendant obtained judgment in the cause in replevin, and sued out a writ, *de retorno habendo*, and filed his bill in Chancery, insisting that he had an equitable lien upon the goods taken in distress for a return of the goods, or payment of the value of them by the assignees. It was urged by the defendants that the landlord had no *title* to the goods, but only a right to call on the Sheriff to take them into his possession. That the writ carried the idea of the right of the tenant to sell the goods, that the landlord had no interest or property in them and could not prevent the replevin ; that the *sale* by the Commissioners took away all the right of the landlord ; that the assignees sold the goods before the landlord was entitled to the *retorno habendo* ; and if Bradbury himself had sold the goods after the replevin, the result must have been the same, his other goods would have been liable, and if he had none, the pledges would be. That the replevin bond was not forfeited before the bankruptcy, so that Bradbury was not discharged ; he and his sureties might be sued, for, till the return awarded, there was no forfeiture of the bond.

Lord Loughborough, Lord Commissioner, said that when the goods were replevied, they are delivered over to abide the

Burkle *v.* Luce.

event of the suit. If they came afterwards into the hands of persons in privity with the tenant, they would be liable upon the return, &c. If sold, an action for money had and received, would lie for the money, and concluded by saying: "If the assignees were liable in equity, the value being settled, they must be so at law, and therefore ordered that the bill be retained, and that an action at law be brought for money had and received to the plaintiff's use, against the assignees." Such action was brought, and the Court held that the plaintiff had no lien upon the goods, and afterwards the bill was dismissed, and the defendant left to his remedy on the replevin bond, which, in that case, was complete; and during the pendency of the replevin suit, the property had passed into the hands of the assignees in bankruptcy, who had sold the same, and thereby third persons had acquired rights under the plaintiff in replevin.

The case of Woglam vs. Cowperthwaite, was this: Emlen distrained the goods of Hamilton, his tenant, for rent. The tenant brought replevin and gave security to the Sheriff, and afterwards moved the goods into the house of Woglam, who, after rent had accrued to him, distrained the same goods. The next day after this distress was made, Hamilton removed the goods from off the premises. The officer who made the last distress followed them and had them appraised in the house to which Hamilton had removed them. Shortly after this, and while the goods remained where they were appraised, the defendant, in the first replevin suit, obtained judgment for his rent, and issued a *retorno habendo,* by virtue of which the Sheriff took the goods and delivered them to Emlen's officer who sold them. The action was against the Sheriff for taking the goods under the *retorno habendo,* and the question submitted to the Court was, whether the goods were liable to be taken under that writ so as to exclude Woglam's distress? or whether, by the removal of the goods by Hamilton, the lien on the property acquired by Woglam's distress was not defeated as against Emlen? The Court, on the authority of the case of Bradyll vs. Ball, held that no lien remained

in Emlen; that by the replevin the securities in the bond were substituted in the place of the goods, which were restored to the tenant, as his sole property; that he might sell them, that they might be taken in execution, and that they became liable to any future lien or incumbrance.    Upon the *retorno habendo*, if the identical goods distrained were found in the hands of the tenant undisposed of and unincumbered, they might be taken by the Sheriff; if not, after an *elongata* returned, a *withernam* might go against the general goods of the tenant.

The same principle was repeated in Frey *vs.* Leeper; that the lien on the goods was discharged by the security given to the Sheriff, and as soon as they were delivered back to the plaintiff in replevin, they were open to execution or a new distress.    That was also a cause where the goods had been taken as a distress for rent.

In Acker *vs.* White it was said on the authority of the first two cases, that the bond given to the Sheriff is a substitute for the goods, and that a replevin of the goods put an end to the lien of an execution which had been previously levied. But in that case the replevin suit was still pending.

Neither of the cases referred to, decide the precise point involved in this case.    In the first three cases, the plaintiff in replevin was the *general owner* of the goods, and as such had an unquestionable legal right to sell or dispose of them without a replevin, subject to the *lien* acquired by the defendant in replevin by his distress for rent; therefore, in those cases there is some and perhaps an entire propriety, in saying, that the lien by the distress was extinguished by the replevin and that the bond was a substitute for it, especially as the goods had been sold or disposed of by the general owner during the pendency of the suit and third persons had acquired rights in them.

In the other case, White the plaintiff had purchased the property in question of Jessup, the general owner, and left it in his possession.    But a few days prior thereto, Hillyer as Sheriff, under an execution against Jessup, had levied upon it

and soon after White's purchase took possession of it, for which, White brought replevin against him, to whom, under it, the property was delivered, and who again left it in the possession of Jessup; the replevin suit was tried and a verdict for Hillyer found, instead of taking judgment for a return, he elected to take an assessment for the value of the goods; White made a motion for a new trial which was undecided, when Acker subsequently as Sheriff under an execution against Jessup upon another judgment, levied on the same property still in his possession; for which, White brought replevin against him and obtained a verdict and judgment in the Superior Court of New York; on error, the Supreme Court held, 1st, that White independent of his purchase of Jessup, should be regarded as having all the interest in the goods which belonged to Sheriff Hillyer under his *fi. fa.* and if that was sufficient to defeat the levy of Acker on his *fi. fia.* it equally enured to the benefit of White. That the bond was substituted for the goods, and was conditioned among other things, to *return the property* if adjudged against him— and although the lien of the execution was gone according to the cases cited, *it was because it was regarded as an equivalent security* for the satisfaction of the judgment to the extent of the value of the goods. That it would seem, therefore, but just and equitable that the interest to the extent of the lien should pass to the party thus giving the security and asking a deliverance according to law. And 2nd, the goods being in the custody of the law under a valid levy by Hillyer, who was entitled to the exclusive possession of the same, the defendant Acker could not acquire any new right to the possession while that claim existed, in full force, to be satisfied either out of the property by a return, or the security given therefor.

The case of Lockwood vs. Perry, (9 *Metcalf*, 440) in principle, bears a nearer resemblance to this case, than the cases above referred to. There Lockwood was the owner of two colts,—one Barnes claimed them as his property, and by a writ of replevin issued out of the Common Pleas in Columbia

22

County in this State, the Sheriff took the colts from Lock-wood and delivered them to Barnes. The action was tried, and the plaintiff Barnes recovered a judgment, in that Court; the defendant brought error to the Supreme Court where the judgment was reversed and a *venire de novo* was awarded,—before a trial was had, Barnes died insolvent while the suit was thus pending, having previously sold the colts to the defendant Perry; after the death of Barnes, and before Lockwood brought the suit, he demanded the colts of Perry, which he refused to deliver. He then brought replevin for the colts. The colts were never the property of Barnes, nor had he any right to the possession of them, unless he acquired a property in them by virtue of his action of replevin. It was held that Perry acquired no title to the colts by purchasing them of Barnes.

The Court in that case, said, that the position taken by the defendant, that the object and purpose of the writ of replevin were to transfer the possession of the article replevied to the plaintiff in replevin, was certainly well maintained, if by possession, be understood, a possession for the time being. That the further position that the plaintiff in replevin, after the service of the writ, has a right to sell the property thus replevied, and may give to the purchaser a good indefeasible title, which would not be affected by a *judgment in favor of* the defendant in replevin, was one more difficult to be sustained. That if it were limited to replevin in cases of wrongful distress of personal chattels for rent, or of cattle damage feasant, it might be more readily assented to, as in such cases the property is held by the defendant in replevin for a particular purpose, and he does not claim to be the owner of it; and where the plaintiff in replevin, who in such case is the actual owner, has given the requisite security, by a bond, to pay such rent, or such damages, if the property is not returned, it might be all that was requisite to do perfect justice between such parties. That a plaintiff in replevin, who was the *real owner* of the property, might deal with the goods as his own, and make a legal transfer. But that did not sanction the

Burkle *v.* Luce.

broad doctrine, that by reason of the mere fact that he had acquired his possession through writ of replevin, his vendee acquired thereby an indefeasible title as against every body. That by the writ of replevin the plaintiff acquired the right of possession pending the action of replevin, and that the real owner could not lawfully disturb that right during the pendency of the action, nor institute an action against a third person who might become possessed of the goods ; and that was the extent of the right exercised by force of a writ of replevin.

It was further held that the abatement of the replevin suit, by the death of the plaintiff, operated to defeat a right of possession of a chattel acquired under a writ of replevin, having no other foundation besides that which results from such writ ; and that the defendant, under such circumstances, may avail himself of his antecedent title, as the lawful owner, to regain the possession, although he may not have a judgment for a return of the property, provided he was content to resort to the property itself, and forego his remedy upon the bond.

In the case at bar, it has been shown that this property on which the defendant levied belonged to Burckle; and as such the defendant had an unqualified right to it for the satisfaction of the creditor's judgment. Mrs. Seitz, without any right to the property as against the creditor, availed herself of the action of replevin to obtain possession of it.

The suit having abated by her death, and she not having sold the property, but dying possessed of it, the plaintiffs as her executors succeeded to her rights and nothing more. In my opinion the proceedings upon the writ of replevin conferred upon her a mere temporary right of possession, which expired with the abatement of the suit by her death, and that, when that event occurred, the lien of the execution revived. Especially as the rights of no third person had intervened under her, and that the defendant was at liberty to retake the property by virtue of his former levy. I concur with the opinion expressed in this case (6 *Hill* 558) "by the Supreme

Court that if he could not regain possession peaceably, he might after a demand, bring trover or replevin against the executors, or against any one else who had acquired no rights under Mrs. Seitz while the action was pending, or under her representation afterwards. Upon the operation of these principles no one is exposed to sustain any injury, for if the defendant retakes the goods, a remedy is open to the plaintiffs representatives to test the right by suit, but the principle for which the plaintiffs contend, would without any remedy work a wrong. The defendant as Sheriff is justly entitled to the goods for the satisfaction of the execution in his hands under which he first seized them, and has no remedy either by judgment, or upon the replevin bond. If his lien did not thereby revive, by which he could retake or sue for the goods in case they were withheld from him by the representatives of the plaintiff, he would, although he had an indisputable right to the goods, be without any remedy.

It is objected by the plaintiffs, that the Circuit Judge erred in refusing to charge the jury in respect to the question of fraud as requested; I am unable to see any ground for the objection; he left the whole question to them with proper instructions as to the law of the case, not indeed in the language of the request, but in a manner as I think better calculated to enable the jury rightly to comprehend the question and their duty and province.

The execution in favor of Rathbun against Burkle was properly received in evidence. It was a substitute for the original ordered to be issued by the Supreme Court. There was no necessity of proving the loss of the original execution upon the trial in order to give in evidence its substitute. This substitute was admissible as primary evidence, and therefore it is unnecessary to decide whether a proper foundation was laid for its admission as secondary evidence. (*Jackson* vs. *Hammon*, 1 *Caim. R.* 496; *White* vs. *Lovejoy*, 3 *Johns. R.* 448; *Love* vs. *Little*, 17 *Johns. R.* 346; *Chichester* vs. *Cande*, 3 *Cow. Rep* 39.)

There is no error in the judgment of the Supreme Court and it should be affirmed.

Judgment affirmed.