## Seibel, Appellant, v. Firemen's Insurance Company.

*Insurance—Fire insurance—Examination of books and accounts.*

Where a policy of fire insurance provides that the insured after a loss shall produce his books and accounts at such reasonable place as the company may designate, and it appears that the company had its principal office out of the state, and no office within the state where books and accounts might be submitted, and the company after a loss notifies the insured that he would be required to produce his books and accounts at such reasonable place as may be designated by the company, but the company does not thereafter designate such place, the failure of the insured to produce his books and accounts is not a ground for a defense by the company in an action upon the policy.

*Insurance—Fire insurance—Arbitration—Revocation.*

A mere naked agreement in a policy of fire insurance to arbitrate, may be revoked before the arbitrators have agreed upon an award.

Argued Nov. 11, 1903. Appeal, No. 61, Oct. T., 1903, by plaintiff, from judgment of C. P. Lancaster Co., 1898, No. 92, on verdict for defendant in case of Martin Seibel v. Firemen's Insurance Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before LIVINGSTON, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*H. M. North* and *J. W. Johnson*, for appellant.—It cannot be

pretended that any place was named by the defendant, either reasonable or otherwise. That the representative of another company had named a place at which they desired the books, bills, etc., produced cannot avail the defendant in this case. The agent of the other company was not the agent of the defendant in this case, and had never been so appointed.

Seibel v. Lebanon Mutual Insurance Company, 197 Pa. 106, has no application to this case. That case was decided distinctly on the ground that the Lebanon Company had named the city of Lebanon as the place at which they desired the books, bills, etc., produced for their examination. The right to refuse to arbitrate, or to revoke submission to arbitration, in cases like the one under consideration, is sustained by a long line of authorities, among which are the following: Power v. Power, 7 Watts, 205 ; Johnson v. Andress, 5 Phila. 8 ; Wood v. Finn, 1 Clark, 396 ; McKenna v. Lyle, 155 Pa. 599 ; Gray v. Wilson, 4 Watts, 39 ; Mentz v. Armenia Fire Ins. Co., 79 Pa. 478 ; Commercial Union Assurance Co. v. Hocking, 115 Pa. 407 ; Penn Plate Glass Co. v. Spring Garden Insurance Co., 189 Pa. 255.

*W. U. Hensel*, for appellee.—Where a submission to arbitration is part of an agreement containing other terms to be performed by the parties, the submission is not revocable : McKenna v. Lyle, 155 Pa. 599 ; Zehner v. Lehigh Coal and Navigation Co., 187 Pa. 487 ; Jube v. Brooklyn Ins. Co., 28 Barbour, 412 ; O'Brien v. Commercial Fire Ins. Co., 63 N. Y. 108 ; Shisler v. Keavy, 75 Pa. 79 ; Uhrig v. Williamsburg City Fire Ins. Co., 101 N. Y. 362 (4 N. E. Repr. 745) ; Davenport v. Long Island Ins. Co., 10 Daly (N. Y.), 535 ; Holmes v. Richet, 56 Cal. 307 ; Herrick v. Belknap, 27 Vt. 673 ; Hudson v. McCartney, 33 Wis. 331.

The court below was right in holding that the plaintiff, the insured, was bound to comply with the requirements of the policy to make complete and satisfactory proofs of loss and furnish copies and bills : Seibel v. Lebanon Mutual Ins. Co., 197 Pa. 106 ; Konicz v. Teutonia Ins. Co., 22 Pa. C. C. Rep. 249 ; O'Brein v. Commercial Fire Ins. Co., 63 N. Y. 108 ; Farmers' Fire Ins. Co. v. Mispelhorn, 50 Md. 180 ; Mispelhorn v. Farmers' Fire Ins. Co., 53 Md. 473.

OPINION BY HENDERSON, J., January 21, 1904:

This action was brought to recover the amount of a fire loss sustained by plaintiff under a policy of insurance issued March 2, 1898. A clause in the policy contained the following provisions: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described and submit to examinations under oath by any person named by this company and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

The plaintiff gave notice of the fire and furnished proofs of loss, and on June 4, 1898, his attorney received written notice from the adjuster of the company that the papers received by it purporting to be proofs of loss were not satisfactory to the company, and would not be accepted by it as complying with the conditions of the contract. No particulars were given, however, with respect to which the proofs of loss were objectionable. The letter also contained the following: "We demand in accordance with said policy (see lines 83 to 85 both inclusive), that you shall produce for our examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"I am informed that Mr. Karmany has already made this demand upon you, but thinking that possibly you might construe this as only applying to his company, I write you in reference to the same myself."

The Mr. Karmany referred to was the representative of another insurance company, which had issued a policy on the same property. The plaintiff placed the subject of proofs of loss and the business connected therewith in the hands of his attorney, but did not produce for examination his books of account, bills, invoices, etc. At the trial the learned judge was of the opinion that the plaintiff's failure so to do defeated his right of action, and accordingly directed a verdict for the defendant.

The principal question involved is whether the receipt of the notice from the company of June 4, 1898, by the plaintiff's attorney, imposed upon the plaintiff the duty of producing books of account, etc., for examination without further notice as to the place where they were to be so produced. The provision of the policy above quoted evidently contemplates action by the insurer if further evidence of loss be desired than that contained in the formal proofs of loss. The requirement is not absolute, but only becomes operative at the demand of the company. Its language implies that notice shall be given to the insured that the company desires to take advantage of this provision of the contract, and it is expressly stipulated that the books, etc., shall be produced at a reasonable place which shall be designated by the company. The terms of the contract do not charge the plaintiff with any duty in this respect until he has received notice in accordance therewith. Does the letter of June 4, 1898, change the plaintiff's situation? It is not a request to produce the books and documents at any place, but a notice that the insured will be required by the company to furnish, in addition to the evidence presented by the proofs of loss, the further evidence of books, bills, invoices and other vouchers, and the insured was in the same communication informed that these evidences of loss would be required " at such reasonable place as may be designated by this company or its representative." If the defendant desired to examine the books of account, etc., of the plaintiff, it became its duty not only to notify him of the fact but to appoint a place at which they might be produced for inspection, which place was not to be arbitrarily fixed by the company, but must be a " reasonable " one, as provided for in the contract. The language of the letter of June 4 would lead the insured to believe that the company intended to designate some place at which the documentary evidence should be produced. The provision of the contract is a reasonable one, and the plaintiff upon notice would be bound to comply therewith, but, in order to entitle the defendant to the advantage of it, a place must be designated at which the plaintiff is bound to perform his part of the undertaking. There is nothing in the contract of insurance, nor in the letter referred to to put the plaintiff on notice as to any place where the defendant desired the production of the books,

etc. The defendant is a corporation having its principal office in another state, and it does not appear that it had any office in this state which the defendant might have considered the place at which to submit the ·books and accounts. The reference to Mr. Karmany in the letter does not amount to a notice to produce them before him. Mr. Karmany represented another company, and had no connection with the defendant. The demand made by Mr. Karmany, to which reference is made in the letter, was evidently a demand on behalf of the company which he represented, and it was because the two companies were acting in concert that Mr. Karmany's name appears in the letter. The contention of the defendant that the proofs should have been presented at Lebanon is not supported by the evidence in the case. The defendant had neither agent nor office at that place, and, if production had been made there, the defendant might well have said that it had not designated that place, and that therefore the insured had not complied with the requirements of the policy. Nor can we say that the plaintiff should have assumed that the defendant desired to have the books produced at its home office. The language of the letter of June 4 justified the plaintiff in assuming that designation would be made by the defendant of the place where he might submit his bills and accounts for inspection.

It is contended, however, by the defendant that irrespective of the failure of the plaintiff to produce his bills, accounts, etc., he is not entitled to recover because the parties submitted their differences to arbitration, and that as the arbitrators had not agreed, the suit was prematurely brought. The court below ruled against the defendant on this proposition, and in so doing was in accord with the adjudication of the Supreme Court on the subject. The revocability of a general arbitration clause is established by many cases: Gray v. Wilson, 4 Watts, 39; Snodgrass v. Gavit, 28 Pa. 221; Lauman v. Young, 31 Pa. 306; Hostetter v. City of Pittsburg, 107 Pa. 419.

In Mentz v. Armenia Fire Insurance Company, 79 Pa. 478, it was held that a general agreement of reference is revocable. To the same effect is Commercial Union Assurance Co. v. Hocking, 115 Pa. 407. In the case last named, the provision of the policy was that "in case differences shall arise respecting any loss or damage, after proof thereof, the matter shall,

at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding," etc. There was a further special provision of the policy that " no suit or action against this company shall be sustainable in any court of law or chancery until after the award shall have been filed fixing the amount of such claims." Two arbitrators were chosen by the parties.   The action was brought before they had been able to agree.   It was held that the agreement of reference did not oust the jurisdiction of the court, and that the effect of the arbitration clause was not affected by the fact that two of the arbitrators had been chosen.   It was further held that the bringing of the suit was a revocation of the submission to arbitration.

In Yost v. Dwelling House Insurance Co., 179 Pa. 381, the court held that the arbitration clause in the policy of insurance in question in that case " was a revocable agreement, and the insurance company is in no position to complain here or elsewhere of the revocation of it."   See also Penn Plate Glass Co. v. Spring Garden Insurance Co., 189 Pa. 255.

The authorities cited by the learned counsel for the defendant are cases where the submission to arbitration was part of an agreement containing other terms to be performed by the parties, among which are Williams v. Tracey, 95 Pa. 308, White's Appeal, 108 Pa. 473, McKenna v. Lyle, 155 Pa. 599, and Zehner v. Lehigh Coal & Nav. Co., 187 Pa. 487.

In Paist v. Caldwell, 75 Pa. 166, the law as to the revocability of agreements of reference is thus stated : " Where the agreement partakes of the nature of a contract whereby important rights are gained and lost reciprocally, and the submission is the moving consideration of these acts, a different rule prevails. Such agreements are compromises, and should be faithfully adhered to unless there has been fraud or corruption or gross misbehavior by the referees."

The agreement of reference in the policy on which this action was brought is a mere naked authority, and did not bind the company to the payment of the amount of loss which the referees might find the insured had sustained.   The policy expressly provides that " this company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating

160      SEIBEL, Appellant, *v.* FIREMEN'S INS. CO.

Opinion of the Court—Dissenting Opinion. [24 Pa. Superior Ct.

to the appraisal, or to any examination herein provided for." The agreement of submission does not therefore come within the class of cases held by the courts of the state to be irrevocable.

The record of the trial shows moreover that the plaintiff offered to prove that the arbitrator chosen by the defendant had declined to proceed further with the reference, and that the arbitration had been abandoned, which offer was rejected by the court.

Reliance is placed by the defendant on the case of Seibel v. Lebanon Mut. Insurance Co., 197 Pa. 106, which was an action on a policy issued on the same property. The provision in the policy on the subject of the production of books, etc., was similar to that in the plaintiff's case. In that case, however, the attention of the insured was not only called to the particular provision of the policy, but a formal and specific demand was made upon him that the information desired be forwarded to the office of the company at Lebanon, Pa., by mail or otherwise, and emphasis is placed in the opinion of Chief Justice McCollum on the fact that compliance on the part of the insured " was insisted upon from the first and demand for its performance was renewed and continued." There was in that case not only a request for performance but a designation of the place at which performance was to be made, and the insured was plainly bound to comply with the request of the company. In this respect the case is distinguishable from that which we are called upon to determine.

We hold, therefore, that the plaintiff's right of action is not defeated by his failure to produce his books, papers, accounts, vouchers, etc., for examination by the defendant, until a place has been designated at which they are to be produced.

The judgment is reversed and a venire facias de novo is awarded.

MORRISON, J., dissenting :

I cannot agree with the opinion of the court reversing the judgment in this case. The learned court below decided against the plaintiff, relying on Seibel v. Lebanon Mutual Insurance Co., 197 Pa. 106, which was an action on a policy issued on the same property. It is claimed that the facts distinguished

that case from the present one.    I am unable to see that the facts in the two cases, as to the production of books of account, bills, etc., differ sufficiently to bring the present case under a different rule of law than was applied so pointedly in the former one.

In the present case, the plaintiff alleging that his store, goods, etc., were destroyed by fire, forwarded proofs of loss to the insurance company, defendant.    On June 4, 1898, his attorney received written notice from the adjuster of the company that the papers received by it purporting to be proofs of loss were not satisfactory to the company and would not be accepted by it as complying with the conditions of the contract.    The letter also contained the following :  " We demand in accordance with said policy (see lines 83 to 85, both inclusive), that you shall produce for our examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

No reply was made to this notice and demand, and soon thereafter this suit was brought.

The excuse set up by the plaintiff for not complying with his request is twofold : 1. His books, etc., referred to in the notice were destroyed by fire, and 2. That he did not procure any copies nor endeavor to do so, because the company in said letter failed to name a place for the production of the same. It seems to me clear that it was the duty of the plaintiff to reply to the letter of June 4, 1898, informing the company of the loss of his books of account, bills, invoices, etc., and offering to procure such copies as he could get, and asking the company to designate a time and place for their production.    This provision in the contract of insurance is a reasonable one and it is intended to protect the company from fraudulent claims, and I do not think that it can be avoided by such a sharp technicality as the plaintiff resorted to in this case.

If the company had named a place and time for the production of the books of account, bills, invoices, etc., in the letter of June 4, 1898, or at any time thereafter prior to the commencement of the suit, it would probably have amounted to nothing because the plaintiff admitted at the trial that he made no effort to procure certified copies and in fact did not procure

any prior to bringing suit.  In my opinion the facts proved at the trial did not excuse the plaintiff from making an honest effort to comply with the demand contained in the letter of June 4, 1898, from the company.  And, therefore, under the doctrine of Seibel v. Lebanon Insurance Company, supra, he could not recover, and I would affirm the judgment of the court below.