## JACOB ROBINSON *vs.* GEORGES INSURANCE COMPANY.

Where it is provided, that any dispute arising upon a policy of insurance shall be referred to arbitrators to be mutually chosen by the parties, an action may be sustained upon the policy without any offer to refer.

Where a vessel has been stranded on a sand bar, within the *United States,* and within an hundred miles of the place of holding a Court of the *United States* for the district, and has been put afloat and repaired by salvors, the master has no power to refer the claim for salvage without the assent of the owners.

And if upon such reference, the arbitrators award more than fifty per cent. of the value of the vessel to the salvors for salvage, and the Master of the vessel sell her to pay the salvors, an action cannot be maintained against the insurers for a total loss, without an express abandonment.

ASSUMPSIT on a policy of insurance.

There was in the policy the usual clause, providing for a reference in case of disputes arising under it. There was no evidence of any offer to refer before the commencement of the suit. The counsel for the defendants requested WESTON C. J. presiding at the trial, to direct a nonsuit, because no offer to refer had been made. This was declined by the Chief Justice.

The plaintiff claimed as for a total loss. It was proved, that the vessel insured was stranded on a sand bar at the mouth of the *St. John's River,* in *Florida;* that she was abandoned by the master and crew; that she was subsequently found and got afloat by the master and crew of a steamboat, aided by steam power; that there was no Judicial Court which could be resorted to nearer than *St. Augustine;* and that the master of the vessel and of the

steamboat referred the question of salvage, and the award was ninety per cent. for salvage, leaving but $95 for the owners, on sale of the vessel by the master. The time when the vessel was stranded does not appear in the case, but it does appear, that a protest was made at *Charleston,* in *South Carolina, Dec.* 7, 1836, and that this, and a former protest and other documents, were forwarded to the owner in the county of *Lincoln* in this State, and that he abandoned to the defendants on the twentieth of the same *December.* It appears from the rulings and instruction of the Judge, that other material facts were proved at the trial, but they are not found in the report of the case.

The jury were instructed, that they might find as for a total loss, although in the hands of the purchaser, the vessel was afloat, and susceptible of being repaired, and was repaired for less than half her value, even without abandonment; that if there were no means of making the necessary repairs at the port where the vessel was, and if from the troubled state of the country, and the smallness of the port of *Jacksonville,* near which the vessel was, the master could not raise the necessary funds, and if the claim of the salvors amounted to the greater part in value of the vessel, the master was justified in causing her to be sold. The jury found a verdict, as for a total loss, deducting the $95 received. If the nonsuit should have been ordered, or the verdict cannot be sustained under those instructions, a new trial was to be granted.

*Holmes,* for the defendants, contended : —

1. That an offer should have been made by the plaintiff to refer. The defendants claim nothing, and they cannot make the offer. The policy declared on is express, that any dispute respecting claims under the policy should be referred to arbitrators.

2. The instruction to the jury in relation to abandonment was erroneous. Unless there is an absolute destruction of the property, there can be no recovery for a total loss, without a legal abandonment. There is but one exception, the sale by the master in case of extreme necessity. The extreme necessity is an affirmative to be made out by the insured. Here no such extreme necessity is proved. In the act of abandonment, the master can never be the agent of the insurers. He becomes so only when the abandon-

ment is rightly made. It was not made in season, and therefore the defendants, if liable, are liable only for the damage. The cases cited, were *Murray* v. *Hatch,* 6 *Mass. R.* 465; *Mitchell* v. *Edie,* 1 *T. R.* 608; *Bryant* v. *Com. Ins. Co.,* 6 *Pick.* 131; 3 *Kent,* 300; 15 *East,* 13; *Gordon* v. *Mass. F. & M. Ins. Co.,* 2 *Pick.* 249; *Robinson* v. *Jones,* 8 *Mass. R.* 536.

3. The counsel insisted, that the defendants were not liable for any thing, and went into an extended argument in support of the position. The instruction was wrong, that the master might refer the question of salvage without consulting the owners. The insurers are not liable for the incapacity of the master. 3 *Kent,* 300. The owners are liable for the acts of the master, until they discharge themselves by a legal abandonment. *Emerigon,* 67, 102. And the master was bound to do all he could. *Bryant* v. *Com. Ins. Co.,* 6 *Pick.* 131. There was no proof, that the repairs could not have been made where the misfortune happened. The instruction that the jury might infer it, was therefore wrong. The instruction was wrong, that where a loss was constructively total, there was no need of an abandonment. The very reason for requiring it, is, that the owners may interpose and prevent a total loss. *Gordon* v. *Bowne,* 2 *Johns. R.* 150.

*Randall,* for the plaintiff.

1. The provision to refer all disputes under the policy is wholly unavailing, as it requires a further mutual agreement to give it any effect. It is entirely immaterial, whether this clause is in the policy, or out of it. 1 *Phil. on Ins.* 8, and cases there cited.

2. A proper sale for expenses is a total loss without abandonment. *Patapsco Ins. Co.* v. *Southgate,* 5 *Peters,* 604; *Gordon* v. *Mass. F. & M. Ins.* 2 *Pick.* 249.

3. The master had the power to refer the question of salvage, under the circumstances of the case. *Hall* v. *Franklin Ins. Co.* 9 *Pick.* 466; 1 *Phillips on Ins.* 461.

4. The right of the master to make sale of the vessel to pay salvage, though once questioned, is now admitted in extraordinary cases. 2 *Burr.* 683; 1 *Doug.* 231; 2 *Pick.* 249; 2 *B. & A.* 518; 3 *Atk.* 195; *Sewall* v. *U. S. Ins. Co.* 10 *Pick.* 90; *Patapsco Ins. Co.* v. *Southgate,* 5 *Peters,* 604; 7 *Cowen,* 564; 12 *Peters,* 378.

The opinion of the Court was drawn up by

EMERY J. — On reviewing the report in this case, we consider that the Chief Justice would not have been warranted to direct a nonsuit. The clause in the policy providing for a reference, if disputes arise, has long been practically ranked among the unimportant provisions of the policy. On whom is the obligation to make the first offer? We see nothing in the provision that indicates it. It is treated in the *English* authorities as of little consequence, because it ought not to be holden sufficient to oust the courts of law or equity of jurisdiction. *Kill* v. *Hollister*, 1 *Wilson*, 129 ; *Street* v. *Rigby*, 6 *Ves.*, *Jr.* 815. Yet *there* it seems to be conceded that a clause might be introduced, by which an offer to refer might become essential, provided the stipulations were that no suit at law or in equity should be instituted till an offer of reference had been made and refused. And in such case a nonsuit might become highly proper, if the precedent condition were not complied with ; unless as in 2 *C. & P.* 550, *Goldstone et al.* v. *Osborne et al.*, the insurer denied the general right of the assured to recover anything. *Here* there is no such preliminary requisition. In its best form, it may be somewhat difficult to execute fully, because of the case with which one party might be taking exceptions to the referees to be named by the other, either on the alleged or fancied ground of incompetence, prejudice, interest, want of firmness, patience, intelligence, integrity, or many other causes, which might incline one of the parties rather to distrust whomsoever might be designated by the other, and in *Phillips on Insurance*, it is described as altogether unnoticed, as of binding efficacy in the *United States.* 1 *Phil. on Ins.* 8, *and cases there cited.* A graver question is presented in a further examination of the proceedings at the trial on the instruction to the jury " that they might find as for a total loss, although in the hands of the purchaser, the vessel was afloat, and susceptible of being repaired and was repaired for less than half her value, even without abandonment."

On misfortune arising in the course of a voyage, if the master, acting under extreme necessity, and in the exercise of prudent discretion, for the benefit of all concerned, sell the property, and thereby put an end to the adventure, the assured may treat the loss as total and abandon. As if from the nature of the place, at which

the damage happens, it is impossible to procure repairs there, or to proceed to another port for that purpose, or where goods are so damaged that they cannot be sent on to market, no means of transhipment exist, or from their nature, they are unfit to be kept for the purpose of being forwarded to their destination. 5 *M. & S.* 447. *Roux* v. *Salvador*, 32 *Eng. Com. Law R.* 110.

We do not say that abandonment is absolutely necessary in the case of the legal transfer of the property by a necessary and justifiable sale. There would seem to be a species of incongruity in requiring it. Because if the sale be good and justifiable, there is nothing to be abandoned. The right of property is perfectly changed. 2 *Pick.* 261, 265 ; *Patapsco Ins. Co.* v. *Southgate & al.* 5 *Peters*, 604, at *p* 623.

In 2 *Starkie's Rep.* in 1819, *page* 501, *Robertson* v. *Caruthers, Abbott C. J.* remarks, that the question is not whether by possibility, if a different conduct had been pursued by the master, the ship might not eventually have been saved, but whether exercising the best discretion he could upon the subject matter, he was not justified in abandoning the ship without entering into a nice and minute calculation. He certainly must not act hastily and at random. He must exercise the same judgment and discretion as if the ship had been uninsured. See *Dacosta* v. *Newnham*, 2 *T. R.* 408 ; 1 *Camp.* 541 ; *Thompson* v. *Rowcroft*, 4 *East*, 34 ; *Leatham & al. Exrs.* v. *Terry*, 3 *B. & P.* 479 ; *McArthy* v. *Abel*, 5 *East*, 388 ; *Everth* v. *Smith*, 2 *Maule & Selw.* 278. There were further instructions to the jury, that the master might refer the question of salvage, unless his so doing under the facts, was evidence of fraud or negligence on his part, and that if there were no means of making the necessary repairs at the port where the vessel was, and if from the troubled state of the country and the smallness of the port of Jacksonville, near where the vessel was, the master could not raise necessary funds, and if the claim of salvors amounted to the greater part in value of the vessel, the master was justified in causing her to be sold.

Notwithstanding our desire to make all just allowances for the difficulty of deciding absolutely right by masters of vessels, in embarrassing cases, occurring in foreign countries, we consider that the authority of the master to put in peril the interests of the owner

in the ports of the *United States, must be narrowly watched.* We readily admit, that salvors have a lien on the property saved. But upon what is disclosed by the report, we do not perceive what was the special purpose for entering into a reference as to the salvage, without consulting his owners. The vessel was removed from the bar ; the lien of the salvors remained. The mails went regularly. Communications could have been made to the owners. The tribunals of justice were open for ascertaining the amount of salvage, which should have been allowed upon something like legal principles. The salvors could libel the vessel for compensation. *St. Augustine* is not more than 100 miles from *Jacksonville.* To *St. Augustine* resort might have been had to the District Court, to which properly appertains jurisdiction in cases of this nature. Had the owners been consulted, and authorized the reference, though the amount awarded by the referees or arbitrators would not be conclusive on the underwriters, yet the fair expenditure of a just compensation for salvage might go to shew that the damage sustained exceeded fifty per cent. of the value of the vessel, and in that way constitute a constructive total loss.

But considering the very great danger there would be to the interests of commerce, if facilities should be extended for depriving owners of their vessels under imaginary necessity, indulged by a master, without consulting the owners, for resorting to referees to settle questions of salvage, when our own judicial tribunals could be applied to, and at so short a distance as *St. Augustine* was from the place of injury, we are all of opinion that, under the circumstances of this case, we cannot sustain the instruction, " that the master might refer the question of salvage, unless his so doing under the facts was evidence of fraud or negligence on his part."

The right of the master to sell is implied from the nature of the case, when the injury to the vessel is so great, and the necessity so urgent, as to justify this extraordinary measure. *It is a power,* as held by the Supreme Court of the *United States,* in the case cited from 5 *Peters,* 604, *to be exercised with great caution and only in extreme cases,* and it is said there, that the difficulty in all these cases consists, principally, in the application of the rule to a given case, and not in determining what the rule is. The professional skill, the due and proper diligence of the master, his opinion of the ne-

cessity, and the benefit that would result from the sale to all concerned, would not justify the sale, unless the *circumstances under which the vessel was placed rendered the sale necessary in the opinion of the jury.* Still the objections against the sale in this case are decisive. They arise from the hasty assent of the master to the reference, which we cannot approve, and to meet the expenses of the salvage awarded on that submission, by the sale, without any advice or consultation of the owners. The vessel was afloat and repaired. From the view which we have taken of the case, it is not necessary to consider now the question of abandonment. We think it highly proper, that the verdict be set aside and a new trial granted.