### CHICAGO M. & ST. P. RY. CO. *v.* STEWART.

*(Circuit Court, D. Minnesota.* December, 1883.)

1. AWARD—SPECIFIC PERFORMANCE.
    An agreement for the conveyance of land at a price to be fixed by an arbitrator named in the agreement, will not be specifically enforced unless the award is made within a reasonable time.

2. SAME—REASONABLE TIME.
    In such a case a delay of six months in making the award, when the value of the land is rapidly increasing, is unreasonable.

3. SAME—ENTIRE TRACT TO BE APPRAISED.
    Specific performance will not be decreed of an agreement to convey a tract of land by warranty deed, with covenants against incumbrances, at a price to be appraised by an arbitrator, unless the award of the arbitrator appraises the entire tract without reference to easements and other incumbrances thereon.

Bill in equity brought to obtain decree for the specific performance of a written agreement for the sale by defendant to complainant of certain land. The agreement is dated April 21, 1879, and provides that the defendant—

"In consideration of one dollar to him in hand paid, the receipt of which is hereby acknowledged, and other considerations hereinafter named, has bargained and sold unto the said second party, and upon payment of the further consideration therefor as hereinafter provided doth hereby covenant and agree to convey to the said party of the second part, by a good and sufficient warranty deed, free and clear from all incumbrances, on demand of the party of the second part, all that piece or parcel of land situate in said Hennepin county and state of Minnesota described as follows."

Here follows a particular description of the land by metes and bounds, and the remainer of the agreement is as follows:

"And said parties do mutually agree to submit to D. R. Barber, Esq., of said Minneapolis, the question of the value of said piece or parcel of land, and the compensation to be paid therefor by said second party to said first party, and that his decision shall be final. And upon the payment of such sum as shall be so fixed and determined by said Barber, the party of the first part will at once execute his waranty deed of the same as aforesaid, free and clear of all incumbrances except a certain lease to Wiggins & Thompson; the party of the second part to take the same subject to such lease, and to receive any

and all rents hereafter accruing under said lease. The award of said Barber is to be made in writing and a copy thereof to be delivered to each of said parties."

On the first day of October, 1879, the said arbitrator made his award, by which he fixed the value of said land at the date of said agreement, and the compensation to be paid therefor, at the sum of $3,350. The respondent resists the claim of the complainant upon various grounds, among which are the following: (1) That the arbitrator, after his appointment, refused to accept the same, and declined to act, continuing his refusal for about four months, but afterwards, and at the expiration of about six months, he decided to act, and did so against the objection and protest of defendant, who in the mean time had revoked his authority; (2) that the arbitrator, in making his award, did not include, but on the contrary omitted, a part of the land included in the agreement.

*McNair & Gilfillan,* for complainant.

*Geo. B. Young,* for defendant.

McCRARY, J. We will first consider the question whether the powers of the arbitrator had ceased prior to the time when he undertook to act. The agreement is silent as to the time within which the award was to be made. In such a case the arbitrator must act within a reasonable time. What is a reasonable time must be determined in each case upon its own peculiar facts and circumstances. If the property to be sold is situated in or near a growing and prosperous city, and in a place where the value of real estate may be expected to increase rapidly, it would be fair to presume that the parties contemplated promptness. A delay in fixing the price for a period of five or six months, under such circumstances, would be unreasonable, because the value of the property within that time would be very materially changed. Much would depend, in such a case, upon the question whether the agreement contemplates the fixing of the price according to the value at the date of the contract or at the date of the award. If the former, then the seller would certainly be entitled to a prompt appraisement, and a delay of five or six months would, as to him, be unreasonable, because it would require him to sell at a price which might and probably would be much below the value of the land at the time of the conveyance and at the time of the payment of the purchase money.

The contract in the present case is silent as to the question whether the value at date of contract or at date of award shall constitute the price to be paid for the land; but the arbitrator evidently considered it his duty to ascertain the value at the former period, and to fix the price accordingly, as he expressly states in his award that he fixes the value of the property at the time when the agreement was entered into, which was the twenty-first day of April, 1879, while the award is dated October 1, 1879. The delay was for more than five months, and the arbitrator acted in the end against the pro-

test of the defendant. The property is situated very near to the cities of Minneapolis and St. Paul, both of which have grown with marvelous rapidity within the past 10 years, and at the time of the agreement it was known that the land in question was advancing in value. It is scarcely to be presumed that defendant intended to bind himself to sell his land in October for its appraised value in the previous April, and if not, he must have understood that the arbitrator was to act at once, or at least without unnecessary delay. That such was his understanding is apparent from the fact which appears in evidence that he urged the arbitrator to accept the duty and proceed to act soon after his appointment, which the latter declined to do. After waiting some four months for action by the arbitrator, the defendant concluded not to consummate the sale, and accordingly notified the arbitrator that he objected to his acting after so long a delay. If the arbitrator was right in assuming that the land was to be appraised according to its value at the date of the contract, we think defendant had a right to object to the delay. If the arbitrator was wrong in that, then his award must be set aside on that ground. The evidence sufficiently shows that the land increased in value between April and October, 1879.

Nothing appears on the face of the agreement or in the evidence to show that the parties to the contract contemplated any unnecessary delay in making the award as to the value of the land, and it is plain that no great delay was necessary. We do not, of course, mean to say that the arbitrator was bound to act immediately. He was at liberty to take a reasonable time in which to determine as to his acceptance of the trust, and thereafter a further reasonable time in which to investigate the question of value and make his award. But it is manifest that no great length of time was needed in which to determine the question submitted to the arbitrator in this case. Under the circumstances of the case, we do not think the delay of over five months was contemplated by the parties when they entered into the contract, nor do we think it reasonable. We should, therefore, in the exercise of the discretion which belongs to courts of equity, decline to decree a specific performance of the award, even if this were the only objection to its validity.

It is, however, further insisted that the arbitrator excluded from consideration, in making his appraisement, the quantity of land included in certain streets, or supposed streets, being a part of the land to be conveyed, and of which complainant now asks a conveyance by warranty deed. Whether there were any streets or highways constituting easements upon the land was not a question for the arbitrator to determine. The contract called for a deed of general warranty against all adverse claims, except a lease mentioned therein, and it was provided that the arbitrator should appraise the entire tract. The arbitrator was not authorized to go into an inquiry as to the effect upon the value of the land of the supposed public ease-

ments for street purposes, for the conveyance with covenants of warranty, as provided for by the contract, would have bound defendant to remove or vacate the streets, if any lawfully existed, or to pay to complainant the damages resulting to it in consequence thereof. If the award fixed the price subject to an easement, and the contract be specifically performed by the execution of a warranty deed as therein provided, and now demanded by complainant, then the defendant will be called upon to convey more than he is paid for. He would convey free of all easements, and, if any are found to exist, would be bound by his covenants to remove them. He would be paid only for the land subject to the easement.

Upon consideration of the proof we find that it clearly appears that the arbitrator took into account at least one street in fixing the price of the land, and reduced the price by the sum of $150, on account of the same. In his own testimony he distinctly says: "If I had known certain that that road did not come out, the award would have been $3,500, instead of $3,350." And again: "If I had known certain that no road would cross there, $3,500 was the net sum." And still further: "The award would have been $3,500 instead of $3,350 for the tract, as the papers show that I had seen, if I had known that there wasn't any road there to be taken off. That I say."

It is clear that the duty of the arbitrator was to appraise the whole tract without inquiry as to the incumbrances or easements. These were to be removed by the grantor. It is also clear that in deducting $150 from the value of the tract on account of easements, he departed from or varied the contract. In order to enforce a contract by specific performance, the court must be enabled to specifically perform every part of it. We cannot decree a specific performance with a variation. 1 Sugd. Vend. 221; *Jordan* v. *Sawkins*, 4 Brown, Ch. 477; *Nurse* v. *Seymour*, 13 Beav. 254; *Carnochan* v. *Christie*, 11 Wheat. 446. The award is also bad for the reason that it does not cover the entire matter submitted, to-wit, the value of the whole tract without reference to easement.

It is well settled that a failure to include in the appraisement any part of the property is fatal to the award. Morse, Arb. 361; *Emery* v. *Wase*, 5 Ves. 846; S. C. on appeal, 8 Ves. 505; *Nickels* v. *Hancock*, 7 De Gex, M. & G. 300, 318. It matters not that the portion of the property which was omitted from the appraisement was small in comparison with that which was appraised. It is enough if it was a substantial and material portion of the property, and whether in the present case it was worth only $150, or more or less than that sum, is immaterial. Nor can the award be now amended by adding to the appraisement the value of the property omitted. The parties agreed to be bound, not by a price to be fixed by any court, but by the judgment of the arbitrator named, upon the entire matter submitted. Should the court now attempt to add anything to the award it would violate the agreement, instead of enforcing it specifically. *Nickels* v.

*Hancock, supra; Wakefield* v. *Llanelly Ry. & Dock Co.* 68 Eng. Ch. 11; *Skipworth* v. *Skipworth,* 9 Beav. 135. The fact that the arbitrator omitted from the appraisement a part of the property, may be shown by evidence *aliunde* the award. *Bean* v. *Farnam,* 6 Pick. 269; *Hale* v. *Huse,* 10 Gray, 99.

The other questions discussed by counsel need not be considered. We deem it proper, however, to say that the proof does not, in our judgment, sustain the charge of defendant that the arbitrator was guilty of improper conduct or of partiality. His errors were simply errors of judgment, but they were nevertheless such as to preclude us from decreeing a specific performance of the contract and award. It is therefore ordered that the bill be dismissed.

NELSON, J., concurs.

---

### Specific Enforcement of Awards and Contracts to Arbitrate.

A party to an award has several remedies at his disposal in case the person against whom the award is made refuses to abide by or to perform it. If both parties are in court, the award may be made an order of court, and, performance may be compelled by the usual means resorted to by a court to compel obedience to its orders. If the parties are not in court, an action for damages will lie upon the award. In this note it is proposed to discuss the equitable remedy of specific enforcement, and its application to awards and arbitration contracts.

1. AWARDS—GENERAL RULE. A party is entitled to come into equity to compel the specific performance of an award whenever he cannot obtain, by proceeding at law, all that was intended to be given him by the award. Inadequacy of the remedy at law is the basis of the jurisdiction in equity.[1] This basis is broad enough to warrant the specific enforcement of awards relating to personalty, as well as of those relating to realty; for at law a party can only get damages for the breach of an award, which may be a very inadequate remedy even where the award is of personalty; *e. g.,* where a rare picture, or shares of stock in a private company, or a patent are awarded. Damages in such case would be inadequate, because impossible of ascertainment. What jury can estimate the value of a rare picture, or of a patent, or of private stock? Here, therefore, as in an award of real property, is it especially appropriate to apply the equitable remedy of specific enforcement.

*Illustrations.* A partner can, as against his copartner, enforce the specific performance of an award that the partnership stock on hand and accounts be equally divided.[2] Especially will specific performance be decreed after one party has partly performed the award. Thus, where the award was that A. pay B. £900, and seal a release to B., B. to assign several securities he had from A., and A. sold lands to raise the £900, expecting B. to receive it, as he intended he would, and then tendered him the amount, together with the release, the lord chancellor decreed specific performance by B., even though the award was extrajudicial, and not strictly good in law.[3] So, an award relative to the partition of lands will be enforced.[4] A bill in equity

[1] Jones v. Blalock, 31 Ala. 180.
[2] Kirksey v. Fike, 27 Ala. 383.
[3] Norton v. Mascall, 2 Vern. 24. See, also, Cook v. Vick, 2 How. (Miss.) 882;

Viele v. T. & B. Ry. Co. 21 Barb. 381; Hall v. Hardy, 3 P. Wms. 187.
[4] Whitney v. Stone, 23 Cal. 275.

also lies to compel the execution of a deed of land ascertained by an award of arbitrators appointed to settle the boundary line between the lands of the parties;[1] and, generally, equity may compel the specific performance of awards concerning real estate, or for the purchase and sale thereof, even though it involves the enforcement of an award to pay money;[2] and in any proper case specific performance of an award will be decreed, although it be by parol;[3] and although it award costs, which it is beyond the authority of arbitrators to do;[4] and the fact that the submission contains a clause by which each party binds himself to the other in a sum certain, as a penalty, in case he refuse to abide by and perform the award, does not deprive a court of equity of the power to decree a specific performance of the award, even though the party refusing to perform offers to pay the penalty agreed upon;[5] and the court will enjoin proceedings at law until the award can be specifically enforced.[6] Nor is the fact that the arbitrators have received incompetent evidence an objection to their award being enforced.[7] Neither is mere inadequacy of the price awarded to be paid for land a valid objection to enforcing the award, the inadequacy not amounting to conclusive proof of fraud.[8] Fraud may also give a court of equity jurisdiction to enforce an award. Thus, where an award provided that, in the event of the non-payment of a certain sum of money, judgment should be rendered against the defendants in a suit then pending for its recovery, and by the connivance of defendants, and a third party, who assumed to act as plaintiff's assignee, the plaintiff was nonsuited without his knowledge or consent, so that the specific remedy provided by the award was defeated, held, that these facts brought the case within equitable cognizance, and that the direct payment of the money might be ordered by the court.[9] The party seeking specific enforcement must show a readiness to perform all the award on his part.[10]

*Exceptions.* In the following instances specific enforcement of the award was refused: The parties to a submission bound themselves to perform the award which certain arbitrators should "make and publish in writing under their hands," concerning a boundary line in dispute. The arbitrators executed a paper as an award, read it to the parties, and delivered copies to them, with an oral statement of the actual decision, and that it was uncertain whether the award expressed it, but that, if it did not, it should be afterwards amended when the mistake should be ascertained. The chairman afterwards learned that the line actually agreed upon was not correctly stated, and he accordingly amended the original award, which he had retained, but which was not again presented to the other arbitrators for signature, nor republished. Held, that equity would not enforce either the amended or original award.[11] Where it appeared that the arbitrators were deceived, and the award was made clandestinely by part of the arbitrators, without hearing each party, the court set aside and refused to enforce the award.[12] Where arbitrators to determine the value of real estate omitted to take into consideration the value of a water power, and appraised it at much less than the real value, specific performance was refused.[13] So, also, in *Parker* v. *Whitney*,[14] wherein the price was fixed considerably below the real value of the property. Specific performance of an award for the payment of money merely, will not be compelled.[15] And where an award was that A. should pay B. a certain number of dollars "in currency" and an additional sum "in gold," specific enforcement

[1] Caldwell v. Dickinson, 13 Gray, 365.
[2] M. & O. R. Co. v. Scruggs, 50 Miss. 284.
[3] Marsh v. Packer, 20 Vt. 198.
[4] Caldwell v. Dickinson, supra.
[5] Whitney v. Stone, 23 Cal. 275.
[6] Jones v. Blalock, supra.
[7] Viele v. T. & B. Ry. Co., supra.
[8] Id.

[9] Story v. N. & W. R. Co. 24 Conn. 94.
[10] McNeill v. Magee, 5 Mason, 245.
[11] Caldwell v. Dickinson, 13 Gray, 365.
[12] Ives v. Medcalfe, 1 Atk. 64.
[13] Buys v. Eberhardt, 3 Mich. 524.
[14] Turn. & R. 366.
[15] Wood v. Shepard, 2 Pat. & H. (Va.) 442.

was refused as to the portion directed to be paid "in gold."[1] Laches may lead a court of equity to refuse specific enforcement of an award. Thus a bill for a reconveyance of an estate pursuant to an agreement and subsequent award, the bill being brought as against purchasers after a considerable lapse of time, and the original vendee being dead and insolvent.[2] An agreement to sell at a price to be fixed by arbitration will not be enforced, where some of the parties to it are married women, one of whom had not executed it.[3]

2. CONTRACTS TO ARBITRATE—GENERAL RULE. Contracts to arbitrate are not specifically enforceable. The reasons upon which this rule rests are several, and seemingly good ones. At common law (however it may be by statute) arbitrators cannot compel the attendance of witnesses or administer an oath. They cannot compel the production of documents, books of account, and papers, or insist upon a discovery of facts from the parties under oath. One reason, therefore, of the refusal of equity to specifically enforce contracts to arbitrate is this: Equity will not compel a party to submit the decision of his rights to a tribunal which confessedly does not possess full, adequate, and complete means within itself to investigate the merits of the case and to administer justice. Another reason is that equity will not make a vain decree, incapable of enforcement. Suppose it decrees specific enforcement. How can it compel the parties to name the arbitrators? How can it compel them to agree upon the arbitrators? The court has no authority to select arbitrators for the parties. This subject is elaborately discussed by Mr. Justice STORY in *Tobey* v. *Bristol Co.*,[4] who concludes that "the very impracticability of compelling the parties to name arbitrators, or upon their default for the court to appoint them, constitutes, and must forever constitute, a complete bar to any attempt on the part of a court of equity to compel the specific performance of any agreement to refer to arbitration. It is essentially, in its very nature and character, an agreement which must rest in the good faith and honor of the parties, and, like an agreement to paint a picture, or to carve a statue, or to write a book, or to invent patterns for prints, must be left to the conscience of the parties, or to such remedy in damages for the breach thereof as the law has provided." Another reason why courts of equity refuse specifically to enforce an agreement to arbitrate is because so to do would bring such courts in conflict with that policy of the common law which permits parties in all cases to revoke a submission to arbitration.[5] Finally, perhaps the best reason for refusing specific enforcement in such cases is that so to do ousts the courts of jurisdiction, and tends to refer the decision of difficult legal questions to inexperienced and incompetent persons.

*Illustrations.* Among the cases which illustrate the refusal of the courts to compel an arbitration are the following: A statute authorized county commissioners to submit certain claims of A. to arbitration. They ordered a reference of part of the claims. Held, that A. could not present a schedule of names of persons who would be acceptable as arbitrators, and compel, by decree in equity, the selection of some of them by the commissioners, and a reference of all the claims to them.[6] A testator, in his will, provided that any disputes regarding it should be decided by certain arbitrators, and that any party who should refuse to submit to arbitration should forfeit his rights under the will. Held, that such provision was *in terrorem* merely, and that no such forfeiture could be incurred by contesting any disputable matter in relation to it in a court of justice.[7] A. agreed, in writing, with B. that if B. would buy certain shares in a corporation held by C., the company should employ him at a certain yearly salary, and that, if the company should fail or

[1] Howe v. Nickerson, 14 Allen, 400.
[2] McNeill v. Magee, 5 Mason, 244.
[3] Emery v. Wise, 5 Ves. Jr. 846.
[4] 3 Story, 826.

[5] Greason v. Keteltas, 17 N. Y. 491.
[6] Tobey v. Bristol Co. 3 Story, 800.
[7] Coutee v. Dawson, 2 Bland, (Md.) 264.

refuse to give him employment, A. would purchase the shares of him at a fair price; that, if the parties could not agree as to what was a fair price, the same should be determined by arbitrators, whose decision should be binding. Held that, even if the agreement was not void as against public policy, specific performance of it would not be compelled.[1]   Under a mortgage of real estate to secure a bond containing this stipulation: "That should either party be dissatisfied with the fulfilling of the above bond, it shall be submitted to certain persons, (named,) and their decision shall be final,"—the mortgagee may enter forclosure for a breach of the mortgage without resorting to the opinion of the arbitrators named.[2]   Further, to the effect that a mere agreement to refer to arbitration, where no reference has taken place, cannot take away the jurisdiction of any court, see *Mitchell* v. *Harris*[3] and *Street* v. *Rigby*.[4]

*Insurance Policies.*   It is not infrequently provided in policies of insurance that any dispute arising under the policy shall be referred to arbitrators. Such agreements to arbitrate, it has been decided, do not oust the courts of their jurisdiction.[5]   So, where the underwriters refused to pay the loss of the assured, his right of action was held immediately to accrue, although there was a clause in the policy that payment was not to be made until 90 days after proof and adjustment of the loss, and that, in case of dispute, the same might be settled by arbitrators.[6]   The action may be sustained without. any offer to refer;[7] although, if there be a reference depending, or made and determined, it might have been a bar.[8]   But in *Scott* v. *Avery*[9] it was decided that, although an agreement which ousts the courts of their jurisdiction is illegal and void, yet an agreement in a policy of insurance as to arbitration was not of that description, since it did not deprive the plaintiff of his right to sue, but only rendered it a condition precedent that the amount to be recovered should be first ascertained, either by the committee or arbitrators. In *Goldstone* v. *Osborne*[10] it was held that the insured might maintain an action on such a policy, notwithstanding the condition, when it appeared that the insurers denied the general right of the insured to recover, and did not merely question the amount of damage.   So he may, if the insurance company waive the right to a submission to arbitration, as by taking possession and repairing the thing insured.[11]

*Valuations—Renewal of Leases.*   It is not uncommon to insert in leases stipulations for a renewal upon a rent to be a percentage of a valuation by appraisers or arbitrators.   The parties to such a lease do not waive the jurisdiction of the ordinary tribunals.[12]   But in these cases the courts will not compel the parties to name arbitrators.[13]   It is not meant to say, however, that the courts will not enforce contracts to renew leases; on the contrary, many cases decide that the courts will compel a renewal of such contracts.   Thus, where A. filed a bill in equity alleging that he had demised certain premises to B., with the agreement that near the end of the lease A. and B. were each to appoint an assessor, and the assessors a third, who should unanimously assess the value of the improvements and the yearly

[1] Noyes v. Marsh, 123 Mass. 286.
[2] Hill v. More, 40 Me. 515.
[3] 2 Ves. Jr. 129.
[4] 6 Ves. Jr. 814.
[5] Allegre v. Maryland Ins. Co. 6 Har. & J. 408; Robinson v. George's Ins. Co. 17 Me. 131; Kill v. Hollister, 1 Wils. 129; Amesbury v. Bowditch Ins. Co. 6 Gray, 596.
[6] Allegre v. Maryland Ins. Co., supra.
[7] Robinson v. George's Ins. Co. 17 Me. 131.
[8] Kill v. Hollister, 1 Wils. 129.

[9] 8 W., H. & G. 497.
[10] 2 Car. & P. 550.
[11] Cobb v. N. E. M. Ins. Co. 6 Gray, 193.
[12] Gray v. Wilson, 4 Watts, 39.
[13] Johnson v. Conger, 14 Abb. Pr. 195; Kelso v. Kelly, 1 Daly, 419; Biddle v. Ramsey, 52 Mo. 153; Hopkins v. Gilman, 22 Wis. 476; Greason v. Keteltas, 17 N. Y. 491; Gourlay v. Duke of Somerset, 19 Ves. Jr. 429; Agar v. Macklew, 2 Sim. & Stu. 418; Strohmeir v. Zeppenfeld, 3 Mo. App. 429; Chichester v. McIntire, 4 Bligh, (N. S.) 78.

rental, and that A. should then have the privilege of buying the improvements, or should grant a renewal of the lease at the rental so fixed, and with the old covenants, and that B. had always appointed partial assessors, so that no unanimous decision could be obtained, and had occupied the premises for a number of years since the expiration of the original lease without paying any rent, held, that the bill was proper, and that equity would entertain the suit on the grounds of fraud, account, the prevention of a multiplicity of suits, and because a remedy at law would be neither plain, adequate, nor complete.[1] In New York it is decided that the court will fix the rent, or direct a renewal at the former rent,[2] or order a reference to ascertain what the amount of rent should be.[3] In England, in one case, the court refused to substitute the master for the arbitrators, holding that that would be to bind the parties contrary to their agreement.[4] In another case, the question arose whether a reference to settle a lease to be made by defendant to plaintiff should be to the master, or to G. under an agreement that certain matters in the lease should be judged by G., or, in case of his death, by some other and competent person to be mutually agreed upon by the parties. It was held that the lease must be settled by the master, no steps having previously been taken to secure G.'s approval.[5] And where the concurrence of one of the arbitrators was secured by the influence of the tenant's wife, and the award was especially favorable to the tenant, the latter was denied specific enforcement.[6]

*Valuation in Contracts of Sale.* Nor will courts of equity decree specific enforcement of contracts of sale upon a valuation to be made by arbitrators.[7] But where standing timber was sold, and by the contract the quantity was to be determined by referees named, after an examination and measurement of the timber one of the referees fell sick, and the others made an estimate and report, held, that the sale of the timber was the subject of the contract, and that, to prevent a failure as to the principal matter, equity would furnish means of ascertaining the quantity, but would not compel specific execution of the contract.[8]

*Partnership Contracts to Arbitrate.* A. and B., partners, agreed that A. should withdraw, and that, if afterwards B. should desire to retire, A. should have the privilege of purchasing the good-will, stock, etc., to be valued "in the usual way" by two valuers, one to be named by A. and another by B., or by an umpire. B. refused to allow his valuer to proceed. Held, that there was no contract that a court of equity would enforce.[9] Nor is such an agreement a defense to a suit between partners.[10] But where two partners agreed that upon dissolution one should purchase the share of the other, at a price to be fixed by two arbitrators appointed by each partner, the court held the valuation not of the substance of the agreement, and that it would substitute itself for the arbitrators in order to carry the agreement into effect.[11]

*Contracts for Work.* In contracts with railway and other companies it is usual to stipulate that a reference to the engineer or to some other officer shall be made a condition precedent to recovery in case of dispute under the contract. In such case neither party can sustain an action on the contract

[1] Biddle v. Ramsey, 52 Mo. 153. See, also, Strohmeir v. Zeppenfeld, 23 Mo. App. 429.

[2] Johnson v. Conger, 14 Abb. Pr. 195.

[3] Kelso v. Kelly, 1 Daly, 419.

[4] Agar v. Macklew, 2 Sim. & Stu. 418.

[5] Gourlay v. Duke of Somerset, 19 Ves. Jr. 429.

[6] Chichester v. McIntire, 4 Bligh, (N. S.) 78.

[7] Milners v. Gery, 14 Ves. Jr. 400; Blundell v. Brettargh, 17 Ves. Jr. 231; Griffith v. Frederick Co. Bank, 6 Gill & J. 424; Richardson v. Smith, L. R. 5 Ch. 648; Morse v. Merest, 6 Mad. 25; Smith v. Peters, L. R. 20 Eq. 511.

[8] Backus' Appeal, 58 Pa. St. 186.

[9] Vickers v. Vickers, L. R. 4 Eq. 529.

[10] Wellington v. McIntosh, 2 Atk. 569; Tattersal v. Groot, 2 B. & P. 131.

[11] Dinham v. Bradford, L. R. 5 Ch 519.

without performance, or an offer to perform.[1] In such a case an engineer's award or finding may be conclusive on a *sub*-contractor.[2] But where an agreement was made between a land-owner, through whose land a railway was about to be laid, and the company, whereby it was agreed that an estimate should be made by the company's engineer as to the damages, which should be submited to A., the land-owner's agent, "for approval," "the amount, when agreed upon or determined," to be paid to the land-owner in discharge of all obligations as to the road. A. died before the engineer's estimate was sent in. Held, that submission to A. for approval was of the essence of the contract, and that inasmuch as by A.'s death the contract could not be performed in the manner agreed, the court refused specific enforcement.[3] And the courts have refused to appoint arbitrators to value works, erections, buildings, or the damage caused thereby.[4]

*Exceptions.* Although a court of equity will not in general decree specific performance of an agreement to refer to arbitration, or, on the death of an arbitrator, substitute the master for the arbitrator, yet the party who refuses to supply the deficiency by naming a new arbitrator may be denied relief from a court of equity except upon the terms of his doing equity, which may consist in his consenting to the accounts being taken by the master.[5] And although equity will not decree specific performance of a contract to arbitrate, yet where a question of damages arises it is not error for the court, by consent of parties, to permit the amount to be ascertained by arbitrators and to decree the amount thus found.[6]    ADELBERT HAMILTON.

*Chicago.*

[1] See Monongahela Nav. Co. v. Fenlon, 4 Watts. & S. 205.
[2] Faunce v. Burke, 4 Harris, 469.
[3] Firth v. Midland Ry. Co. L. R. 20 Eq. 100.
[4] Haggart v. Morgan, 4 Sandf. 198; Haggart v. Morgan, 1 Seld. 422; Gibbons v. Edwards, 2 Dru. & War. 80.
[5] Chislyn v. Dalby, 2 Younge & C. Exch. 170.
[6] Conner v. Drake, 1 Ohio St. 166.