## LANG v. EAGLE FIRE CO.

(Supreme Court, Appellate Division, Fourth Department. December 16, 1896.)

1. INSURANCE—CONDITIONS—APPRAISAL.
   An arbitration clause in an insurance policy, requiring the appraisers, in estimating the loss, to state separately the "sound value and damage," does not require the damage to be appraised where the property is totally destroyed.

2. SAME—WAIVER.
   An absolute denial by insurer of all liability on the policy, contained in the notice rejecting proofs of loss, is a waiver of any necessity for arbitration as to the amount of the loss, though the notice also states specifically the grounds for rejection, and disclaims any intention to waive any condition in the policy.

3. SAME—CONDITION—CERTIFICATE OF NEAREST NOTARY.
   Where the notary living nearest to the fire refuses a certificate as to the amount of loss sustained, a certificate of the next nearest notary is a compliance with a condition in the policy requiring a certificate of the "nearest" notary.

4. SAME—ACTIONS ON—PARTIES.
   Insured may sue on a policy pledged by him as collateral security.

5. SAME—PROOF OF AGENCY.
   The fact of agency, so as to render statements by the agent after the loss admissible against insurer, his principal, is proven by evidence that all negotiations for the policy were had between insured and the agent, and that the agent received all premiums, and accounted therefor to insurer.

Appeal from circuit court, Monroe county.

Action by Frederick W. Lang against the Eagle Fire Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals.    Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

P. M. French, for appellant.
Charles Roe, for respondent.

ADAMS, J.    The policy of insurance upon which this action is brought, and which was issued by the defendant to the plaintiff, purports to insure the latter in the sum of "$200 on his barroom furniture and fixtures, bar furniture and fixture apparatus, signs and awnings in and on building," and also "$800 upon his stock of ales, wines, liquors, tobacco, and cigars, all while contained in basement and first floor of the brick building, situate No. 214, on the north side of Andrews street, Rochester, N. Y." The policy was dated August 12, 1892, the risk extending for a period of one year from that time; and upon the 29th day of the same month a fire occurred, in consequence of which the property first above mentioned was more or less damaged, and the stock of liquors contained in the basement was entirely destroyed.    The defendant, in its answer, admits the issuing of the policy in suit, the occurrence of the fire, and the destruction of or damage to the property insured, but denies any liability to the plaintiff, arising out of its contract of insurance, by reason of the alleged breach by the plaintiff of certain conditions which are contained in and made a part of the policy of insurance. The record before us discloses that, upon the trial, numerous objections to the plaintiff's right to recover were urged, none of which appears to have made a favorable impression upon either the court or jury; and, a verdict having been rendered in favor of the plaintiff, upon which a judgment was subsequently entered, the defendant now insists that error was committed in the court below which entitled it to a reversal of such judgment, and, likewise, of the order denying its motion for a new trial.    The grounds relied upon, so far as they are disclosed by the counsel's brief and argument, are four in number; and they will be considered in the order in which they were presented to this court.

The defendant's first, and apparently its main, reliance, is based upon the contention that the plaintiff failed to comply with the requirements of the policy that his loss and damage should be determined by appraisal in the manner therein provided.    In order to ascertain what merit there is in this contention, it will be necessary to refer with some particularity to the facts of the case, concerning which, it may be said, there is little or no controversy.    The policy in suit appears to conform to the standard which has been established for insurance companies doing business in this state, and it contains, among other provisions, one which requires the insured to furnish, within 60 days after a fire shall have occurred, proofs of

his loss, and also a further provision deferring the payment of such loss "until sixty days after due notice, ascertainment, estimate, and satisfactory proofs of the loss have been received by this company in accordance with the terms of this policy." Upon the 23d day of September, and within less than 30 days after the fire, the plaintiff did furnish to the defendant what purported to be his proofs of loss. They were, however, returned to him by the defendant upon the 28th day of the same month, with notice that the latter rejected the same, for certain reasons, which were expressly stated in writing; and in such notice the defendant also requested and required the plaintiff to "furnish to it a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to said insured) living nearest the place of the fire, stating that he has examined the circumstances and believes that the said Frederick W. Lang has honestly sustained loss to the amount that said notary public has certified." Such rejection also contained a notification that the defendant disagreed with the plaintiff as to the amount of loss which he claimed to have sustained, and requested that such loss be ascertained by two competent and disinterested appraisers. Thereafter, and upon the 6th day of October, 1892, the plaintiff furnished additional proofs of loss, and upon the 17th of the same month the parties entered into a written agreement to appraise the loss which the plaintiff claimed to have sustained, which agreement was, in substance and form, as required by the condition of the policy providing for an appraisal. The day following the execution of this agreement, the second proofs of loss were returned by the defendant, with notice of its rejection of the same, the reasons stated for such rejection being substantially the same as before; and, upon the 25th day of October following, the appraisers agreed upon and made their award in writing, in due form, by which they found that the plaintiff's loss by damage to the property covered by the first item of the policy was $124.75. Annexed to such award was a statement by the appraisers to the effect that the same did not include certain furniture and fixtures upon which the plaintiff made no claim, nor did it include any of the property covered by the second item in the policy, because of the fact that such property was destroyed, in consequence of which they deemed it impossible to make any appraisal. Thereafter the plaintiff made repeated efforts to obtain a settlement with the defendant, which were unsuccessful, and he subsequently brought this action. Upon the facts thus narrated, it is now urged by the defendant's counsel that the method of determining the loss which is provided by the policy is exclusive, and that, an appraisal having been had, the plaintiff's recovery must be limited to the amount thereby ascertained and determined.

It is of the first importance, therefore, as it seems to us, to determine what portion of the insured property is affected by the appraisal clause in the policy. By referring to this provision, it will be seen that the appraisers to be selected are required to estimate and appraise the loss, stating separately "sound value and damage." And it has been held, very properly, as we think, that this require-

ment can have no possible relation to property insured which has passed out of existence by reason of its total destruction. Rosenwald v. Insurance Co., 50 Hun, 172, 3 N. Y. Supp. 215. The appraisers selected by the parties seem to have acted upon this principle, and have only attempted to estimate the loss which the plaintiff sustained in consequence of damage to his property which was not totally destroyed, and have certified that they could make no estimate of the property specified in the second item because of its destruction. As already intimated, we think the appraisers adopted the proper rule and method for determining the matter submitted to them; but, whether or not this be so, their failure to estimate the property which was totally destroyed was in no sense the fault of the plaintiff; and, inasmuch as the defendant has not asked for a new appraisal, we fail to see upon what principle it can now be heard to insist that the plaintiff must be limited in his recovery to the damage he has sustained to the property which was only partially destroyed, except in so far as the claim in suit relates to that property; and it appears the amount adjusted by the appraisers is all he was permitted to recover upon the property mentioned in the first item in his policy.

This, however, is in our opinion by no means the only untenable feature of the defendant's position; for it is at least a debatable question whether the defendant, under the phraseology of its policy and the peculiar facts of this case, can insist that the adjustment contemplated by the arbitration clause under consideration shall be treated as a condition precedent to the bringing of an action, or as anything more than an individual covenant collateral to the agreement to pay. Mark v. Insurance Co., 24 Hun, 565. But, without passing upon that feature of the case, we proceed to the consideration of another, and what we regard as a fatal, weakness in the defendant's contention.

It will be remembered that, upon the receipt of the first proofs of loss, the defendant undertook to inform the plaintiff, not only that it rejected such proofs, but to furnish its reasons for such rejection, and in such notification this very explicit language is used, viz.:

"This company hereby expressly avers and claims that it is not liable to you, for any cause whatever, in any sum, and that it is not liable to any person, in any sum whatever, for or on account of loss or damage sustained by the fire referred to."

And the notice of its rejection of the second proofs of loss contained the same language. It is true that, in each of the notices of rejection, the defendant undertakes to specifically state its reasons for returning such proofs, and in the first notice, in addition to the reasons stated, it expresses its dissatisfaction with the amount of loss which the plaintiff claims to have sustained, and seeks to avail itself of the arbitration clause in its policy; but even this dissent is absent from the notice last served, so that we have the defendant simply asserting, in the most positive and unequivocal language, that it is not liable to the plaintiff, nor to any other per-

son, in any sum whatever, for or on account of any loss or damage sustained by reason of the fire hereinbefore referred to.   We are led to inquire, therefore, what construction should be given to such an avowal as this?   It seems to be well settled that a distinct denial of liability, and refusal to pay on the ground that there is no contract or that there is no liability, is tantamount to a waiver of a condition in a policy of insurance which requires proofs of loss to be furnished within a given time.   Tayloe v. Insurance Co., 9 How. 390;  Insurance Co. v. Pendleton, 112 U. S. 696–709, 5 Sup. Ct. 314;  Brink v. Insurance Co., 80 N. Y. 108.

The defendant seeks to escape the application of such a principle in this case by insisting that, inasmuch as both of the notices served upon the plaintiff contained an express denial of any intent to waive anything, it necessarily follows that no right or defense has been waived.   It is true that the concluding paragraphs of these notices do contain a carefully expressed disclaimer of any intention on the part of the company to "waive any surrender, cancellation, or provision or condition in any contract of insurance under which the plaintiff may seek to establish a claim";  but coupled with and immediately following such disclaimer is the further declaration that the defendant will, nevertheless, "maintain that it is not liable to said Frederick W. Lang, or to any other person, in any sum whatever, on account of said fire," which, if we correctly apprehend the situation, is equivalent to saying that, while the defendant claims to owe the plaintiff nothing whatever, it nevertheless insists upon his proving a claim, the existence of which is absolutely denied, before he can be permitted to resort to a legal remedy for the enforcement of his claim.   The sole object of the arbitration clause in a policy of insurance is to enable the parties to adjust the loss and ascertain the damages which the insured is entitled to recover;  but, to make it available to the insurer, there must be something to arbitrate, which certainly would not be the case where all liability under the policy is denied.   In other words, the insurer must admit its liability to pay something before it can insist upon the insured going through with what would be otherwise an idle and useless ceremony.   Wood, Ins. 748;  Mentz v. Insurance Co., 79 Pa. St. 478;  Robinson v. Insurance Co., 17 Me. 131.   If we are correct in our statement of the effect which ought to be given to the defendant's denial of liability, then it necessarily follows, we think, that the defendant cannot limit or modify such effect by the addition of the clause to which attention has just been directed;  and it must, therefore, be held that the plaintiff was under no obligation to have his loss appraised before bringing suit upon his contract.

The defendant further insists that the plaintiff should fail in his action because of his omission to furnish a certificate of the magistrate or notary public living nearest the place of the fire, stating the amount of the loss sustained.   It seems that the policy in suit does in terms require such a certificate to be furnished when requested by the insurer, and that the request was made in this

case. Thereafter a certificate was furnished to the defendant, which is apparently satisfactory in all respects, save that it was not made by the magistrate or notary living nearest the place of the fire. It is conceded that there was such an officer living nearer the place of the fire than the one making the certificate, but, as he declined to act, the plaintiff procured a certificate of the nearest notary who was willing to act. It is to be noticed that the provision which requires this certificate is one which relates merely to the procedure after the loss has occurred, and the courts of this state are inclined to be liberal and reasonable in their construction of the stipulations of a contract of insurance, which prescribe the formal acts upon the part of the insured necessary to the recovery of his loss. McNally v. Insurance Co., 137 N. Y. 389–398, 33 N. E. 475, and cases there cited. In this case we think the plaintiff has done all that could be required of him. He certainly could not compel any magistrate or notary to furnish the certificate called for by the defendant; and if, upon his application to the one living nearest the fire, he was met with a refusal to comply with his request, there was nothing left for him to do but to apply to the one living next nearest. The defendant's contention in this regard is extremely technical, and, in the absence of any objection to the person making the certificate or to the certificate itself, is not entitled to serious consideration.

The third point urged upon the attention of the court is that the plaintiff is not the real party in interest, and, therefore, not entitled to maintain this action. The evidence in the case discloses the fact that, upon the day following the fire, the plaintiff assigned to his mother all moneys due and owing him, or to become due and owing him, upon the policy in suit. But it further appears that such assignment was not an absolute one, but was intended merely as collateral to an indebtedness which the plaintiff owed his mother. And this, of itself, would be a sufficient answer to the defendant's contention; for, if the plaintiff's right of action against the defendant was pledged as collateral security merely, he undoubtedly retained sufficient interest therein to entitle him to maintain this action. Simson v. Satterlee, 64 N. Y. 657; Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309. But, if this were not so, we do not see how this defense is available to the defendant, inasmuch as it is not set up in its answer. It is true that, in a supplemental answer, the defendant avers that the plaintiff's claim has passed into the hands of a receiver; but no claim appears to have been made that he had deprived himself of the right to maintain this action because of any transfer to his mother, until that fact appeared upon the trial, in connection with which it also appeared that, a few days prior to the trial, there was a retransfer of the claim to the plaintiff.

The only subject for further inquiry is that which is furnished by the defendant's exceptions to certain questions which were asked of the witness Max L. Gutmann. The evidence objected to related to a conversation between the plaintiff and the witness, and was

allowed upon the theory that the witness was the agent or representative of the defendant. It is conceded that this evidence was competent, provided the witness was, in fact, such agent; and, as it appears, without contradiction, that all the preliminary negotiations which led up to the issuing of the policy in suit were had with this witness, and that he received from the plaintiff the premium thereon, and accounted to the defendant for the same, it would seem as though his relation to the defendant had been sufficiently recognized to relieve this question of all doubt.

The judgment and order should be affirmed, with costs. All concur.