(21 Misc. Rep. 124.)

## BALDWIN v. FRATERNAL ACC. ASS'N OF AMERICA.

(Supreme Court, Special Term, Steuben County. July, 1897.)

1. ACCIDENT INSURANCE—TOTAL DISABILITY—WHAT CONSTITUTES.

Plaintiff was insured against loss of time resulting from accident which should wholly disable him from transacting any and every kind of business pertaining to his occupation. He sustained injuries whereby he was confined to his house for seven weeks, after which he had to be carried to his store daily for several months, and was unable for over a year to do the manual labor connected with his business, which was that of furniture dealer and repairer, and undertaker. The manual of the association provides that "when a member is deprived, by accidental injury covered by the policy, of the power to perform substantially all the duties of the occupation under which he is insured, he is wholly disabled, within the meaning of the policy." *Held*, that the plaintiff was wholly disabled for the total period of indemnity, i. e. 52 weeks.

2. SAME—CHANGE OF OCCUPATION.

The manual of an accident association contained clauses limiting liability for "an injury received while engaged temporarily or otherwise in an occupation or employment classified as more hazardous than the one stated in the application," and also requiring a policy holder, "on changing occupation or employment," to "notify in writing the association," and provided that "the restriction as to occupation applies only to those who follow such occupation as a trade or means of livelihood." *Held*, that the word "occupation" did not refer to the riding of a bicycle for amusement or convenience.

3. SAME.

In a clause of a policy issued by such association, stating that "members of a higher classification accidentally injured while engaged in polo, baseball games, or bicycling will receive only the indemnity herein provided for such games," the word "bicycling" has reference only to professional riders.

4. SAME—ARBITRATION CLAUSE—VALIDITY.

A stipulation in a policy that, "in the event that the insured and the association disagree as to the liability of the association, it is agreed that such liability and the amount thereof shall be determined by arbitration," is invalid, as being an agreement to refrain from submitting to the courts all questions that arise touching the subject.

5. SAME—WAIVER.

An agreement to submit to arbitration the question of the amount of the insurer's liability under the policy is waived where the insurer denies all liability under the policy.

Action by Israel W. Baldwin against the Fraternal Accident Association of America upon a policy of insurance. Judgment for plaintiff.

John F. Parkhurst, for plaintiff.
John B. Stanchfield, for defendant.

DAVY, J.   This action is brought to enforce an alleged liability of defendant to plaintiff under a policy of insurance made by the defendant, insuring the plaintiff against loss of time resulting from bodily injury through external, violent, and accidental means, which shall immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation; and for such loss of time the defendant obligates itself to pay the plaintiff the sum of $20 per week for a period not exceeding 52 weeks.   The complaint sets forth the terms of the policy, and alleges that the plaintiff was injured by falling from a bicycle on the 3d day of May, 1894, whereby he was wholly disabled for a period of 52 weeks, and demanding judgment for the sum of $1,040.   The answer sets up a general denial of the complaint, except the allegation of the incorporation of the defendant.   It also sets up, as a separate defense that, by the terms of the policy, in the event the defendant and the insured should disagree as to the liability of the defendant in case of an accident, such liability and the amount thereof should be determined by arbitration, and no suit should be brought, except to enforce the award, unless defendant, having been requested to do so in writing, refused to arbitrate, and that no such request to arbitrate was made, or arbitration had.   The answer also alleges that, by the terms of the policy, in case the plaintiff should be injured while engaged, temporarily or otherwise, in any occupation or exposure classified as more hazardous than that specified in the certificate, the indemnity should be at the rate only of the more hazardous occupation.   It also alleges that the plaintiff's injuries were received while riding a bicycle,—an occupation or exposure classified as entitling the plaintiff to an indemnity of $10 per week only.

The evidence discloses that the plaintiff was an undertaker and furniture dealer, and 50 years of age, who resided at Avoca, N. Y.; that on the 3d day of May, 1894, while riding a bicycle from his place of business to his dwelling house, between 8 and 9 o'clock in the evening, he was thrown from the wheel, and his right hip or pelvis was fractured from the injury which he received.   The plaintiff was confined seven weeks in his house, and was under the doctor's treatment for ten months.   It also appears that the effect of the injury was such that, after the plaintiff had been confined seven weeks in the house, he was unable to walk, and had to be carried to his store until the succeeding winter, and was not able, as he claims, to do any manual labor during the year following the injury. It also appears that after his confinement to the bed and house, which was seven or eight weeks, he was daily in attendance at his furniture and undertaking store, with the exception of two or three days immediately after the injury, and that he kept the books of the company, which were brought to him for that purpose, during the whole time that he was confined at the house.   The defendant, by reason of these facts last stated, contends that the plaintiff was not disabled from performing any and every kind of business pertaining to his occupation, as stated in the certificate.   To determine this question, it may be necessary to refer to the printed manual of the defendant, received in evidence on the trial, which was issued in

March, 1894, and was in force at the time of this accident, which
defines the meaning of "total disability" as expressed in the insur-
ance policy.   It says:

"When a member is deprived by accidental injury covered by the policy of the
power to perform substantially all the duties of the occupation under which he is
insured, he is wholly disabled, within the meaning of the policy, and entitled to
indemnity."

This is the construction placed by the defendant upon its own
policy of insurance.   It would seem, therefore, that the disability of
the plaintiff is fairly within the above rule.   The evidence discloses
the fact that he could not walk without crutches for eight or ten
months after the accident, and was not able to engage in any manual
labor for more than a year thereafter.   His regular duties were to
buy goods of agents, and sell them to the people, and repair furni-
ture, such as chairs and tables; and he also trimmed caskets and
made picture frames.   That he was unable to perform any of these
labors during the entire year after the accident is clearly established
by the evidence.

The learned counsel for the defendant contended on the argument
that the plaintiff was injured while engaged in a more hazardous
occupation than the one designated in the policy.   I am inclined
to think that this refers to the person's regular occupation.   The
word "occupation," as used in the policy, is defined in the by-laws or
manual of the defendant as follows:

"The restriction as to occupation applies only to those who follow such occupa-
tion as a trade or means of livelihood."

At the bottom of page 8 of the manual is the following note of ex-
planation:

"For an injury received while engaged temporarily or otherwise in an occupa-
tion or employment classified as more hazardous than the one stated in the ap-
plication, members will be entitled to indemnity only at the rate provided for the
occupation or employment in which they may be insured; and, on changing occu-
pation or employment, they are to notify in writing the association."

This stipulation evidently refers to the list of occupations, and
the duties pertaining thereto.   If it referred to pastime amusements,
then the question would naturally arise, why was it necessary to
notify the association in writing that the insured had changed his
occupation or employment?   The defendant also contends that the
last sentence in the occupation clause specifically includes bicycle
accidents.   It may be well, therefore, to notice the wording of this
clause in the policy, which reads:

"Members of a higher classification accidentally injured while engaged in polo,
baseball games, or bicycling, will receive only the indemnity as herein provided
for such games."

It seems to me that a person who only rides a bicycle occasionally
for convenience and pleasure is not a bicyclist, within the meaning
of said policy.   The mere fact that a man rides a bicycle occasionally
from his place of business to his dwelling house does not make him by
occupation a professional bicyclist.   The clause in the policy evi-
dently has reference to those who are professional bicyclists, and
make their living by racing on the wheel.   These are somewhat

novel and interesting questions, but I am inclined to the opinion that the agreement expressed in the certificate or policy of insurance should receive a reasonable and fair construction, and that the interpretation and construction contended for by the defendant would be unjust to the plaintiff.

The defendant also contends that the plaintiff cannot maintain this action because he failed to comply with the express conditions of the policy requiring him to submit the liability of the defendant to arbitration, and that a request in writing to arbitrate was a condition precedent to a right of action.   The policy provides that, in the event that the insured or beneficiary and the association disagree as to the liability of the association, it is agreed that such liability and the amount thereof shall be determined by arbitration.   The stipulation or agreement compels the plaintiff to submit all the issues that may arise as to the liability of the defendant to arbitration, and, if the arbitrators hold that the defendant is not liable, the plaintiff is bound by their decision.   The question is whether such an agreement is valid and binding upon the plaintiff.   It has been repeatedly held that any agreement which ousts the court of jurisdiction of the whole subject-matter, and which is the sole and only remedy between the parties, is void.   It seems to me that the parties have undertaken by this agreement to provide for the adjustment and settlement of all disputes and differences, to the exclusion of the courts.   The power delegated to the arbitrators to determine the liability of the defendant upon the policy must necessarily give the arbitrators the exclusive right to pass upon all disputed questions and controversies arising thereon.   The case of Sanford v. Association, 147 N. Y. 326, 41 N. E. 694, was an action brought upon a certificate of insurance which contained a clause that, in case the beneficiary should bring an action upon the policy, the issues should be tried before a referee to be appointed by the court.   The court held that a general covenant to submit any difference that may arise in the performance of a contract under an executory agreement is a nullity. Judge Gray, who wrote the opinion of the court, says:

"The dictates of a sound public policy would seem to require that its contracts of insurance, while providing every wise and reasonable restriction, should not compel the individual who seeks to insure his life to submit, as a condition of obtaining that insurance, to conditions which are in violation of constitutional rights. Such a provision in the policy has no reasonable relation to the contract of insurance. Its insertion is unnecessary to the protection of the insurance company, and may be regarded, therefore, as an unimportant provision."

### He also says:

"I think we may safely base our reason for the application of this rule upon the proposition that public policy is opposed to the enforcement of an agreement which supersedes the law, and deprives the individual of the protection which it was designed and framed to afford." Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250; Lang v. Fire Co. (Sup.) 42 N. Y. Supp. 543.

Where the sole question between the parties is as to the amount of indebtedness, such question might properly be ascertained by reference to arbitration; but even then, when it appears from the pleadings, as it does in this case, that the defendant denies any liability

upon the policy, it amounts to a waiver of a condition in the policy of insurance requiring the plaintiff to submit his claim to arbitration. The rule is that the insurance company can claim no benefit from such a provision when it denies all liability under the policy. Lang v. Fire Co., supra.

The facts established by the evidence are sufficient, in my opinion, to entitle the plaintiff to a judgment for the amount demanded in the complaint, with costs.